**UNITED STATES of America,
Plaintiff,**

v.

**Joseph M. DONLON, Defendant.**

**Civ. A. No. 3986.**

United States District Court,
D. Delaware.

Feb. 16, 1973.

Bruce L. Thall, Asst. U. S. Atty., Wilmington, Del., and S. Martin Teel, Trial Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., of counsel, for plaintiff.

Converse . Murdoch and Robert E. Schlusser of Murdoch & Walsh, P.A., Wilmington, Del., for defendant.

## OPINION AND ORDER

LATCHUM, District Judge.

The United States instituted this civil action on October 1, 1970 to reduce to judgment an assessment against the defendant, Joseph M. Donlon ("Donlon"), for unpaid federal wagering excise taxes. Jurisdiction exists by virtue of 26 U.S.C. § 7402(a) and 28 U.S.C. §§ 1340 and 1345.

The relevant facts are as follows: On October 2, 1964 the Government purportedly made an assessment against Donlon and John 'J. Williams (the latter not a party to the present action) for a wagering excise tax liability for the period from January 1, 1956 through December 31, 1962 for a tax of $437,042.13, a penalty of $218,512.04 and interest of $788,543.24. Thereafter on October 26, 1964, an abatement was made of the tax and interest in the amount of $655,563.-17. On July 28, 1970, an abatement was made of the assessed penalty on the full amount of $218,512.04. After applying these abatements and various payments received, the assessed tax balance outstanding is $564,109.29.[1] The assessment was based on records of the Wilmington City Police Department and evidence seized during a search of Donlon's premises in 1960. From these documents the Government determined that Donlon had received $14,236.11 in wagers during the seven day period from March 27 to April 2, 1960. By projecting the average daily receipts for the week into a seven year period from January 1, 1956 through December 31, 1962, the Government determined that Donlon had incurred a wagering excise tax liability for this period of $437,042.13.[2] The Government thus seeks a judgment for $564,109.29 plus interest from the time of the assessment.

Donlon has filed answers to the Government's interrogatories in which he has failed to present any *factual* basis for contesting the tax liability sued upon.[3]. Instead, by an amended answer to the complaint, Donlon has asserted three affirmative defenses which he contend entitles him to a dismissal of the complaint as a matter of law.[4] First, Donlon argues that the assessment with

1. Complaint, Docket Item 1; affidavit of Charles O. DeWitt, District Director, Docket Item 8.

2. Exhs. K–P; Affidavit of Theodore B. Stolman, Docket Item 6.

3. Donlon's Answers to Interrogatories, Docket Item 7.

4. Answer and Amended Answer, Docket Items 3 and 13.

respect to the months of January 1956 through August 1961 is barred by the limitations period provided in 26 U.S.C. § 6501(a) because the assessment was made more than three years after the dates on which the monthly returns would have been due had Donlon been under a duty to file such returns. Second, he claims that the assessment and collection of wagering excise taxes pursuant to 26 U.S.C. § 4401(a) is constitutionally impermissible under the self-incrimination and due process provisions of the Fifth Amendment. Third, Donlon contends that this action is barred under 26 U.S.C. § 6502 because it was not brought within six years from the date of assessment.

The Government has moved for summary judgment in its favor on the ground that there is no genuine issue as to any material fact and that none of Donlon's affirmative defenses is valid as a matter of law.

We turn now to a consideration of the three affirmative defenses raised by Donlon in order to determine whether summary judgment is warranted.

The first question is whether the assessment with respect to the months of January 1956 through August 1961 is invalid because it was not made within three years from the time on which the monthly returns would have been due had Donlon been required to file those returns. 26 U.S.C. § 4401 imposes a 10 percent tax on wagers. 26 U.S.C. § 6011 requires the filing of a return or statement according to the prescribed regulation for any taxes imposed under Title 26. Treas.Reg. 6011(a)–1(a), 26 CFR § 44.6011(a)–1(a), requires a return to be filed for each month for the tax on wagers imposed by 26 U.S.C. § 4401. Treas.Reg. 6071–1(a), 26 CFR § 44.-6071–1(a), requires that the return be filed by the end of the month following the month for which it is made. Consequently, if Donlon was required to file wagering excise tax returns, a return should have been filed for each month by the end of the following month. The

return for the month ending August 31, 1961 would have been due by September 30, 1961 and, of course, returns for the prior months would have been due even earlier. 26 U.S.C. § 6501(a) provides that no assessment shall be made more than three years after a return is filed so that if Donlon had filed returns by September 30, 1961 the tax liability shown in such returns would have become irrefutable by September 30, 1964.

■ Donlon, however, filed no such monthly returns and 26 U.S.C. § 6501(c)(3) provides that there is no limit on time to make an assessment if no return is filed. Donlon contends that, notwithstanding the provisions of § 6501(c)(3), the three year limitation period applies when the failure to file a return is constitutionally protected under Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) and United States v. U. S. Coin and Currency, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971). In *Grosso* the Supreme Court held that because the tax returns required to be filed by gamblers contain information which could well incriminate them in many circumstances, a Fifth Amendment privilege could be raised as a defense to a *criminal prosecution* charging failure to file the required forms. The Court reasoned that a person may not be *punished* for exercising his Fifth Amendment privilege against self-incrimination.

Similarly, in *U. S. Coin and Currency*, the Supreme Court permitted the Fifth Amendment privilege to be invoked as a defense to a forfeiture proceeding brought against a sum of money in the possession of a gambler pursuant to a statute providing for forfeiture in the event of failure to pay the wagering excise tax. The Court reasoned that the statute, although ostensibly civil in nature, was tantamount to a fine because it was primarily used against persons significantly involved in a criminal enterprise. The Court held that the statute was being used to punish persons for exercising their Fifth Amendment

rights in choosing not to file, and hence, the Fifth Amendment *right could be as*serted as a defense to the forfeiture proceeding.

It is Donlon's position that, because of *Grosso*, he was under no duty to file returns for wagering excise taxes and may not be deprived of the defense of the statute of limitations to an assessment for the months in question. He argues that to allow the Government unlimited time to make an assessment under 26 U.S.C. § 6501(c)(3) would constitute "punishment" of him for exercising his Fifth Amendment right in refusing to file a return, and such punishment is proscribed by the Supreme Court rulings in *Grosso* and *U. S. Coin and Currency*. Therefore, he argues, no assessment can be made for the months for which returns were due prior to October 2, 1961.

■■■ The Court rejects the defendant's argument. The "punishment" of unavailability of the three year statute of limitations is not a deprivation of property as was the forfeiture of a sum of money in *U. S. Coin and Currency*. There is no fundamental right to have taxes assessed and collected within any period of limitation. The statute of limitations is merely a self-imposed limit on the Government's remedies against the taxpayer for taxes owed. Lucia v. United States, 474 F.2d 565 (C.A.5, 1973). (En Banc). See Chase Securities Corp. v. Donaldson, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945).

Furthermore, the deprivation of the statute of limitations is not "punishment" in the sense of being primarily directed toward criminal enterprises as was the forfeiture proceeding in *U. S. Coin and Currency*. 26 U.S.C. § 6501(c)(3) applies to any taxpayer who fails to file tax returns, even where the failure is caused by excusable neglect or unavoidable circumstances. The statute is more in the nature of a regulatory measure, designed to serve as a necessary protection to the Government's revenue-raising power when the self-report-ing requirement is not adhered to. Lucia v. United States, supra. See California v. Byers, 402 U.S. 424, 91 S.Ct. 1535, 29 L.Ed.2d 9 (1971).

There is still another difference in the instant situation from that in *U. S. Coin and Currency*. In the latter case the Government sought to deprive the taxpayer of property he could have retained had he complied with the revenue laws. Here, however, Donlon is simply being compelled to pay the tax on wagering and the interest which would have lawfully accrued on the unpaid balance whether or not he filed a return. Thus there has been no "penalty" for the failure to file. Lucia v. United States, supra.

The second defense raised by Donlon is that the method for assessing taxes imposed by 26 U.S.C. § 4401(a) is constitutionally impermissible because the burden of proving the inaccuracy of the assessment is on the taxpayer. If he chooses to challenge the correctness of the assessment, he may run the risk of incriminating himself; if he chooses not to challenge it, he must default the amount of the assessed tax. Thus, the argument goes, he is presented with an unfair dilemma because he must forfeit either his privilege against self-incrimination or his right to challenge a tax assessment against him. In support of this proposition, Donlon cites Iannelli v. Long, 333 F.Supp. 407 (W.D.Pa., 1971). *Iannelli* is clearly distinguishable however. In that case, at the time of the Government's attempt to collect the tax the statute of limitations on criminal sanctions had not yet run, and there was a strong likelihood of future prosecution for gambling so that evidence presented as to the incorrectness of the tax assessment would likely be self-incriminating. Here, however, there would no longer have been any threat of prosecution from state or federal authorities. All applicable criminal statutes of limitation have run so there was no danger that Donlon would have incriminated himself by attacking the correctness of the

assessment.[5] It is noteworthy that in *Iannelli*, Judge Weis enjoined the Internal Revenue Service from executing on its liens only until the criminal proceedings were terminated or until the criminal statute of limitations had run.

Moreover, in *U. S. Coin and Currency*, supra, 401 U.S. at 717, 91 S.Ct. at 1043, 28 L.Ed.2d 434, Justice Harlan stated that "we took pains to make it clear [in *Grosso*] that the Court in no way doubted the Government's power to assess and collect taxes on unlawful gambling activities." See also United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927). The Supreme Court, in affirming the Government's power to assess, was undoubtedly aware of the dilemma which would confront a taxpayer who wished to challenge the amount of the assessment. In Crampton v. Ohio, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971) the Court rejected the argument that being forced to make difficult choices was constitutionally impermissible. In upholding Ohio's procedure for a single trial to decide guilt and punishment in capital cases, the Court held that a defendant may be forced to choose between his Fifth Amendment right against self-incrimination and his Fourteenth Amendment right to be heard on the issue of punishment. The Court observed:

> "The criminal process, like the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. . . . Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." Id. at 213, 91 S.Ct. at 1470 (citation omitted).

From the foregoing the Court concludes that the method of assessment which placed the burden on Donlon to prove any incorrectness of the assessment was constitutionally permissible. See Urban v. United States, 445 F.2d 641 (C.A.5, 1971), cert. den. 404 U.S. 1015, 92 S.Ct. 675, 30 L.Ed.2d 663 (1972).

Donlon's third affirmative defense is that the assessment was in reality made prior to October 1, 1964 so that the present action to reduce the assessment to judgment, brought more than six years later on October 1, 1970, was barred by 26 U.S.C. § 6502.[6] In his amended answer to the complaint Donlon avers that he was without knowledge of the truth of the Government's allegation that the assessment was made on October 2, 1964. He then moved for production of the Government's documents which showed that the assessment for federal wagering excise taxes was made against him on that date. The Government complied by producing an Assessment Certificate dated October 2, 1964 (Form 23 C), an Assessment List dated October 2, 1964 (Form 23B), an Accounting Summary Journal dated October 2, 1964 (Form 19), and a Unit Ledger Card dated October 2, 1964. These documents have also been submitted to the Court by the Government in support of its motion for summary judgment.[7] In addition, the Government has submitted the affidavit of Charles O. DeWitt, the District Director for the Wilmington District of the Internal Revenue Service which avers that the assessment was made on October 2, 1964 and which verifies Exhibits A–D as official records of the Internal Revenue Service.

Donlon responded to the DeWitt affidavit by moving to strike it on the

---

5. Any Delaware anti-gambling prosecution would be barred after two years, 11 Del. C. § 2902, and Donlon could not have been criminally prosecuted under federal law in the light of Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L. Ed.2d 906 (1968) and Marchetti v.

United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

6. 26 U.S.C. § 6502 requires an action to collect a tax to be brought within six years of the assessment.

7. Exhibits A through D, Docket Item 17.

grounds that it contained inadmissible hearsay. However under 28 U.S.C. § 1733 records of account of any Department of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept, and properly authenticated copies of such records are equally admissible. The assessment records involved here were made by an assessment officer pursuant to a duty imposed by law, Treas.Reg. 6203–1, 26 CFR § 301.6203–1, and are thereby admissible as a record of the United States Government. 5 Wigmore, Evidence § 1639. DeWitt, the affiant, by virtue of being District Director, is the custodian of the official records of the Wilmington District of Internal Revenue Service, Holland v. United States, 209 F.2d 516, 520 (C.A.10, 1954), aff'd 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954), and was qualified to authenticate the copies of the assessment records filed in this case. Rule 44, F.R.Civ.P. Since the requirements of 28 U.S.C. § 1733 have been met, the DeWitt affidavit and exhibits are admissible to prove that the assessment was made on October 2, 1964.

 Donlon further responded to the DeWitt affidavit by filing his own affidavit [8] in which he stated that he did not know the essential facts that would support his contention that the assessment was made prior to October 1, 1964 because all documents that would prove this were in the exclusive control of the Government. It is true that under Rule 56(f), F.R.Civ.P., a court may refuse to grant summary judgment if the party opposing the motion files an affidavit showing that for reasons stated he cannot present, by affidavit, facts essential to justify his opposition. Donlon's bare assertion that the facts which would prove the assessment date are in the exclusive control of the Government does not bring him within the application of Rule 56(f). Donlon has totally failed to utilize his rights of discovery to contradict the facts asserted in DeWitt's affidavit and revealed by the documents produced. Suspicion alone without discovery is not enough. The Court cannot deny the Government's motion for summary judgment on Donlon's sheer conjecture. Robin Construction Co. v. United States, 345 F.2d 610 (C.A.3, 1965). The presumption favoring the correctness of the assessment has not been refuted. Psaty v. United States, 442 F.2d 1154, 1160 (C.A.3, 1971).

Finding that there are no material issues of fact in dispute and that Donlon's affirmative defenses are unsound as a matter of law, summary judgment will be granted in the Government's favor.

---

8. Affidavit of Joseph M. Donlon, Docket Item 15.