**Donald J. BROWN, M.D., M.S. In Surgery, Plaintiff,**

v.

**OUR LADY OF LOURDES MEDICAL CENTER, et al., Defendants.**

**Civ. No. 89–2363 (SSB).**

United States District Court, D. New Jersey.

July 15, 1991.

Donald J. Brown, M.D., M.S. In Surgery, pro se.

Brach, Eichler, Rosenberg, Silver, Berstein, Hammer & Gladstone, P.C. by Joseph M. Gorrell, Roseland, N.J., for defendants.

## OPINION

BROTMAN, District Judge.

Presently before the court are three motions—plaintiff's appeal from the Novem-

ber 9, 1990 order of the Magistrate Judge, plaintiff's appeal from the December 27, 1990 order of the Magistrate Judge, and defendants' motion for summary judgment.

## I. INTRODUCTION

Plaintiff is a cardiothoracic surgeon who was denied medical staff privileges at Our Lady of Lourdes Medical Center ("Our Lady of Lourdes" or the "hospital") in May of 1987. He brings this suit against the hospital, its Board of Trustees, the individual members of the Executive Committee and the Ad Hoc Committee of the hospital which denied him staff privileges, the attorneys who represented the hospital at the review proceedings and the retired judge who presided over the Ad Hoc Hearing Committee. He claims that defendants violated the antitrust laws and infringed his due process rights when he was denied staff privileges at Our Lady of Lourdes.

Before the court are plaintiff's appeals from the November 9, 1990 and December 27, 1990 orders of the Magistrate Judge denying him certain relief, and defendants' motion for summary judgment on all claims. The court heard argument on these motions on March 1, 1991, and will address each in turn.[1]

## II. APPEAL FROM THE ORDERS OF THE MAGISTRATE JUDGE

On November 9, 1990, the Honorable Joel B. Rosen, United States Magistrate Judge, entered an order denying plaintiff's motion to add numerous fictitious defendants and to compel defense counsel to accept service of process for certain defendants. Plaintiff filed a timely notice of appeal of that order. On December 27, 1990, the Magistrate Judge entered an order denying additional discovery motions of plaintiff, and again denying plaintiff's motion to add numerous fictitious defendants and to compel defense counsel to accept service of process for the reasons the Magistrate Judge noted on the record on De-

---

**1.** In a letter dated May 7, 1991, Dr. Brown sought a continuance of his trial date due to certain personal circumstances. As the matters before the court have already been fully briefed and argued, this request for a continuance does not affect the court's consideration of the instant motions in any manner.

cember 18, 1990. Plaintiff also filed a timely notice of appeal from that determination of the Magistrate Judge. He contends that the Magistrate Judge erred by denying his discovery motions.[2]

A decision by the Magistrate Judge on a non-dispositive motion will be set aside only if the district court finds that the determination was clearly erroneous or contrary to law. General Rule 40(D)(4)(a); Fed.R. Civ.P. 72(a); *see Cippollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). Hence, the court will examine each of the rulings of the Magistrate Judge to which plaintiff objects in order to determine whether they were clearly erroneous or contrary to law.

■ Plaintiff's first contention of error is that he should have been allowed to name Does 1–200 as additional defendants in this action. The court cannot find that the Magistrate Judge's denial of plaintiff's motion to name 200 fictitious defendants was clearly erroneous or contrary to law. Plaintiff has already been allowed to amend his complaint to add new defendants. At the time he denied plaintiff's motion to add Does 1–200 as defendants, the Magistrate Judge expressly informed plaintiff that he could move in the future to amend his complaint pursuant to Fed.R. Civ.P. 15(a) as to any specific newly named individual, and that such motion would be judged on the merits. Plaintiff's rights are adequately protected by the ruling of the Magistrate Judge, and plaintiff suffers no prejudice from having to move to amend his complaint to name a specific individual.

■ Plaintiff appeals from the denial of his motion to institute criminal charges and/or ethical disciplinary proceedings against Joseph M. Gorrell, Esq., Burton Eichler, Esq., Michael Brennan, Esq., William Cahill, Esq., and the Honorable Edward Martino. As the Magistrate Judge ruled, this court has no jurisdiction to institute criminal charges against these individuals. In addition, the court finds that it

was not clearly erroneous or contrary to law to deny plaintiff's motion to institute ethical disciplinary proceedings against the above-named attorneys as plaintiff has failed to come forward with any facts supporting his contention that the attorneys violated the ethical rules governing the behavior of attorneys.

■ The Magistrate Judge also denied plaintiff's motion to compel the production of the medical records of Elmer Grimes, M.D., or, in the alternative, to compel the deposition of his widow. Dr. Grimes served on the Ad Hoc Committee which voted to reaffirm the Executive Committee's denial of staff privileges to Dr. Brown. Dr. Grimes died recently from a brain tumor. Dr. Brown contends that it is likely that the brain tumor affected Dr. Grimes reasoning ability; therefore, plaintiff argues that he is entitled to discovery concerning the nature and extent of the tumor. The Magistrate Judge denied plaintiff's motion as the medical records of Dr. Grimes are irrelevant to the instant litigation and because the records are protected by doctor/patient privilege. The Magistrate Judge further found that allowing discovery of those items would constitute an invasion of privacy. For similar reasons, the Magistrate Judge denied the motion to compel the deposition of Dr. Grimes' widow. The court concurs with the Magistrate Judge's ruling.

■ Plaintiff also sought the entry of summary judgment against John Manion and the Board of Trustees for their failure to comply with his discovery requests. The Magistrate Judge denied that motion without prejudice to plaintiff's right to renew that motion before this court. After examining plaintiff's submissions, this court finds that defendants have substantially, if not completely, complied with plaintiff's discovery requests. Hence, the court will not enter summary judgment against John Manion and the Board of Trustees as a discovery sanction.

---

**2.** Plaintiff failed to provide the court with a transcript of the hearings before the Magistrate Judge from which he appeals as required by

General Rule 40(D)(4)(a). Nonetheless, the court will consider his motions on the merits.

Dr. Brown moved to compel defendants to provide local (i.e. Camden County) access to discovery. The Magistrate Judge denied that motion as there is no requirement in the Federal Rules of Civil Procedure that discovery materials be kept locally. This ruling was not clearly erroneous, and this court will not overturn it.

The Magistrate Judge also denied plaintiff's motion to compel defendants' counsel to accept service of process for certain defendants. Plaintiff contends that personal service is time-consuming and inconvenient. The court finds that the Magistrate Judge's ruling was not clearly erroneous, and plaintiff must comply with the requirements of Fed.R.Civ.P. 4 despite any inconvenience to him.

Plaintiff objects to other provisions of the Magistrate Judge's orders. After examining the submissions of the parties, the court is satisfied that the rulings of the Magistrate Judge were not clearly erroneous or contrary to law. Hence, plaintiff's motions to reverse or modify the November 9, 1990 and December 27, 1990 orders of the Magistrate Judge will be denied in their entirety.

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. *Facts and Procedure*

Defendants now move for summary judgment or dismissal on several grounds. In order to address defendants' motion, the court must detail the facts in this matter.

On July 1, 1984, plaintiff applied for medical staff privileges at Our Lady of Lourdes. The hospital Credentials Committee granted plaintiff administrative temporary privileges in cardiovascular surgery.

On February 8, 1985, the Credentials Committee reviewed plaintiff's application with plaintiff present. The Credentials Committee recommended that "... Dr. Brown should demonstrate current expertise and proficiency in cardiothoracic surgery ..." Defendants' Appendix ("DA") at 401. The Credentials Committee further recommended that Dr. Brown "could act as an assistant cardiothoracic surgeon with no

primary cardiothoracic responsibilities ..." DA at 402. On April 19, 1985, the Credentials Committee met again, and voted unanimously to reject Dr. Brown's application for Medical Staff privileges. DA at 401. It based its decision on questions relating to Dr. Brown's management of patients from 1967–73 at Atlantic City Medical Center ("ACMC") and his surgical judgment in treating patients from 1974–77 at Huntington Memorial Hospital. DA at 404. In addition, it found Dr. Brown had "failed to provide evidence of present competence in Cardiothoracic Surgery." *Id.*

The Executive Committee met on May 6, 1985 and unanimously adopted the Credentials Committee recommendation to reject Dr. Brown for active staff privileges. DA at 2. In addition, the Executive Committee affirmed the decision of the administrative department to rescind Dr. Brown's temporary privileges at the hospital. *Id.*

Plaintiff requested a hearing before an ad hoc committee of the Medical Staff concerning his denial of staff privileges in a letter dated May 9, 1985. DA at 405. Dr. Brown, through counsel, withdrew his application for privileges without prejudice on June 21, 1985 at the hearing before the Ad Hoc Committee. DA at 8–10. The Committee informed Dr. Brown that it would "retain his file. All of the investigation we have done will be in his file, and we will retain that file, and that if and when he should reapply, all of those inquiries and replies will be available for use at that time." DA at 8–9.

Dr. Brown obtained a position at Deborah Heart and Lung Center in order to demonstrate his current competence in cardiovascular surgery. DA at 8, 407. By letter dated October 16, 1985, plaintiff requested that his application for staff privileges be activated. DA at 407. On February 28, 1986, the Credentials Committee recommended "that Dr. Brown be given temporary privileges in cardiothoracic surgery." DA at 408. Dr. Francis E. Barse, M.D. and Dr. Victor Manuele, M.D., Chief of the Division of Cardiothoracic Surgery, favorably recommended Dr. Brown. *Id.*

On April 7, 1986, the Executive Committee met and voted "... unanimously (with the abstention of Dr. Harrer) to recommend to the Board of Trustees that Dr. Brown's application for staff privileges be denied." DA at 4. The hospital notified Dr. Brown of the Executive Committee's recommendation on April 22, 1986. DA at 409. Dr. Brown requested a hearing to review the adverse recommendation of the Executive Committee. DA at 410. He requested that the Committee notify him of the reason or reasons for its recommendation, and specifically asked that "to the extent specific incidents, cases and/or charts were considered by the Executive Committee, these be identified" so that he and his legal counsel could review them prior to the hearing. *Id.* From the record, it does not appear that any reasons were ever offered to Dr. Brown prior to the hearing.

The hearing before the Ad Hoc Committee was scheduled for September 12, 1986, but was adjourned to November 12, 1986. Former Judge Martino presided over the hearing. *See* DA at 19–21. Plaintiff was represented by counsel. DA at 390. At that hearing, the Ad Hoc Committee allegedly confronted Dr. Brown with 13 year-old transcripts from proceedings concerning Dr. Brown's medical care at Atlantic City Medical Center ("ACMC") where he had worked in the early 1970's. Dr. Brown contends that the allegations made against him in those transcripts were false and were allegedly made in retaliation for exposure of the malpractice of an anesthesiologist at ACMC. He claims that the use of those transcripts at the Ad Hoc Committee hearing constituted a "Pearl Harbor-like attack" upon him which violated his due process rights as he had no notice that the 1973 ACMC hearing transcripts were going to be in issue or that he should be prepared to respond to the allegations contained in the transcripts. Plaintiff's "Comments Re: Defendants' Preliminary Statement Omitted from Plaintiff's Response in Error."[3]

At the hearing, plaintiff entered documents into evidence, DA at 15–17, cross-examined witnesses, *see* DA at 37–60, presented witnesses, DA at 72–125, and testified, DA at 125–215. Judge Martino requested summation at the end of the testimony, but Dr. Grimes, one of the members of the Ad Hoc Committee, suggested that the attorneys submit a written summation. DA at 212. Judge Martino instead suggested that the Ad Hoc Committee reconvene at a later date for the attorneys' summations. *Id.* Dr. Brown's attorney, Mr. Gorelick, then sought to admit three letters into evidence. DA at 213–14. At that point, Judge Martino indicated that when the hearing continued, it would be for the purpose of summation only, not for additional evidence. *Id.* Judge Martino asked Mr. Gorelick, "It's clear now? Tell your client that." Mr. Gorelick, Dr. Brown's attorney, responded, "Yes," and offered no objection to the termination of Dr. Brown's ability to present evidence. DA at 214–15. Judge Martino specifically asked Dr. Brown, "Is that clear?" He responded, "Yes." DA at 215. Judge Martino did permit Dr. Brown to submit medical charts from his California cases. *Id.*

On January 21, 1987, the Ad Hoc Committee reconvened for summations. DA at 222. Judge Martino provided the Ad Hoc Committee members the opportunity to ask Dr. Brown any further questions. *Id.* Mr. Gorelick admitted the California medical charts into evidence, DA at 223–229, and also presented four additional letters concerning Dr. Brown's cooperativeness and reputation which Judge Martino accepted into evidence over the objection of the hospital's attorney. DA at 230. The attorneys then made their summations. DA at 231–259. Following the summations, the committee members asked Dr. Brown various questions. DA at 260–272.

On January 28, 1987, the Ad Hoc Committee met and determined that it should not reverse the decision of the Executive Board denying Dr. Brown staff privileges

---

**3.** Many of the documents plaintiff submitted to the court have unnumbered pages. Where page numbers are available, the court will cite to a specific page. Otherwise, page references will be omitted.

at Our Lady of Lourdes. DA at 284. In its written report, the Ad Hoc Committee indicated that it considered the testimony offered on November 12, 1986, the summations of counsel given on January 21, 1987, the brief concerning Dr. Brown's hearing at ACMC, Dr. Brown's letters, Dr. Brown's charts from his cases at Huntington Hospital in California, and other materials submitted to the Ad Hoc Committee by Dr. Brown. *Id.* The Committee discussed actions taken against Dr. Brown at four medical centers where he had treated patients, ACMC, Shore Memorial Hospital, Huntington Hospital, and Deborah Heart and Lung Center, and the lack of documentation that plaintiff had actually practiced medicine in Alabama for the length of time he indicated he had practiced there. DA at 284–85. The Ad Hoc Committee found that while Dr. Brown had demonstrated he had adequate training, Dr. Brown's difficulties at four previous hospitals demonstrated he had a personality problem. DA at 285. For that reason, the Ad Hoc Committee stated it reaffirmed the Executive Committee's denial of Dr. Brown's application for staff privileges. DA at 286. The Executive Committee concurred with the report of the Ad Hoc Committee on February 16, 1987. DA at 5.

In a letter dated March 4, 1987, Dr. Brown wrote to the Board of Trustees to appeal the adverse determination denying him staff privileges at Our Lady of Lourdes. DA at 411. On April 27, 1987, Dr. Brown's appeal was heard by a Committee of the Board of Trustees. DA at 301. None of the members of the Committee of the Board of Trustees hearing the appeal were doctors. *Id.* Plaintiff appeared at the hearing with his attorney. *Id.* The Committee indicated that it would review the materials submitted to it, and any additional documentation offered by Dr. Brown. DA at 301–02. It appears that Dr. Brown was allowed to submit a three volume response to the report of the Ad Hoc Committee to the Committee of the Board of Trustees. DA at 305, 305–310. At the appeal hearing before the Committee of the Board of Trustees, Dr. Brown spoke on the areas of concern raised by the

Ad Hoc Committee report. DA at 299–342. The Committee of the Board of Trustees then heard from the hospital's attorney. DA at 342–352. After the hospital's attorney concluded, the Committee permitted Dr. Brown to submit an index to his three volume submission. DA at 357–359.

The Committee of the Board of Trustees notified plaintiff's attorney in a letter dated May 27, 1987, that after consideration of the material submitted and the arguments offered, it had "determined that the previous adverse decision was justified and was not arbitrary and capricious." DA at 416. The entire Board of Trustees accepted and ratified the decision of the Committee. *Id.*

Plaintiff filed this lawsuit on May 30, 1989. He filed an Amended Complaint on November 13, 1990. The First Count of the Amended Complaint alleges that defendants conspired in restraint of trade in violation of the Sherman Act, 15 U.S.C. § 1. Plaintiff specifically contends that defendants conspired to prevent him "from operating his trade in an area near his residence, a trade which includes patients from interstate, and a trade which has a substantial number of patients whose care is governed under the Medicare and other relevant medical laws of the U.S. Government." Amended Complaint at ¶ 63(a). The Second Count of the Amended Complaint alleges that defendants participated in a monopoly in violation of the Sherman Act, 15 U.S.C. § 2. The complaint alleges that defendants "formed a monopoly which prevented Plaintiff from operating his trade in an area near his residence ..." Amended Complaint at ¶ 67(a). While plaintiff does not list any additional counts in his Amended Complaint, it is replete with references to a denial of due process. Plaintiff claims that defendants "intentionally violated plaintiff's constitutional rights by depriving him of his right to practice in his trade/profession/specialty without due process of law and without fundamental fairness ..." Amended Complaint at ¶ 26. *See also,* Amended Complaint at ¶¶ 70, 73, 76, 85–88, 90–92, 94, 96–99. Hence, plaintiff's complaint implicitly states a claim for the violation of his due process rights. In

addition, plaintiff asserts that he "was subjected to a three hour defamation by the Defendant Executive Committee based upon discovery from the Atlantic City hospital not provided plaintiff, about events which occurred in 1973 ..." Amended Complaint at ¶ 58.

The court's jurisdiction is based on plaintiff's assertion of federal claims. Diversity jurisdiction does not exist as plaintiff and defendants are citizens of New Jersey. At oral argument held on March 1, 1991, the parties informed the court that Dr. Brown has also filed an action in state court in order to pursue his state law claims based on the denial of medical staff privileges at Our Lady of Lourdes.

The heart of plaintiff's claim appears to be that he had no notice that the ACMC transcripts would be at issue during the November 12, 1986 hearing before the Ad Hoc Committee, and that those transcripts were false and defamatory. Plaintiff's Certification accompanying his Legal Memorandum in Support of Plaintiff's Motions and Responsive to Defendants' Response at ¶¶ 11, 23. When questioned by the court at oral argument, Dr. Brown indicated that the transcripts themselves were not false as they did accurately reflect the accusations made against him at ACMC in 1973; however, the accusations made against him were false and were made in retaliation for his disclosure of an anesthesiologist's malpractice. He indicated that his counsel at the Ad Hoc hearing did not object to the use of the ACMC transcripts at the Ad Hoc hearing because "what use was it to 'object' to their use ... in order to erase the false charges from their minds? The only practical approach was to try to gather up 'raw data' from 1973 and address the matters 'down the line', as the opportunity presented." Legal Memorandum in Support of Plaintiff's Motions and Responsive to Defendants' Response, ¶ 23(B). The injury caused by the failure to notify him that those transcripts were at issue was allegedly compounded by the fact that he was not allowed to present rebuttal testimony on January 21, 1987. As noted above, plaintiff's attorney did not object to the inability to present rebuttal testimony,

and plaintiff was allowed to present certain letters and medical records into evidence at the January 21, 1987 hearing. DA at 230. The Ad Hoc Committee also asked plaintiff additional questions at that time. *Id.*

### B. *Discussion*

The standard for granting summary judgment is a stringent one, but it is not insurmountable. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.,* 789 F.2d 230, 232 (3d Cir. 1986); *Lang v. New York Life Ins. Co.,* 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Recent Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson,* 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Thus, even if the movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### 1. Plaintiff's Antitrust Claims

#### a. *Jurisdiction of the Court*

As an initial matter, the court must resolve whether it has jurisdiction to hear plaintiff's claims. Defendants argue that plaintiff's antitrust claims must be dismissed as plaintiff has failed to allege facts demonstrating that defendants' conduct was in or had a substantial effect upon interstate commerce which is a jurisdictional prerequisite to suit under the Sherman Act, codified at 15 U.S.C. § 1 *et seq.*

In his complaint, Dr. Brown alleges his trade "includes patients from interstate, and a trade which has a substantial number of patients whose care is governed under the medicare and other relevant medical laws of the U.S. Government." Amended Complaint at ¶ 63(a). It is an undisputed fact that with the exception of assisting a few cases at Our Lady of Lourdes in 1984 (DA at 384.5) and serving as Medical Director of the Atlantic City Beach patrol during the summer of 1989, DA at 396, plaintiff has not engaged in the private practice of medicine since 1977. Plaintiff's complaint contains no allegations concerning the involvement of Our Lady of Lourdes in interstate commerce. Defendants contend that "[p]laintiff's complaint amounts to bald allegations about a nonexistent medical practice which, even if unlawfully restrained, would hardly have any more than most de minimis effect on interstate commerce." Defendants' Brief at 26. Hence, defendants posit that plaintiff's allegations fail to establish the jurisdictional prerequisites to suit under the Sherman Act, citing *McLain v. Real Estate Bd.,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980) and *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 747, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976) in support of their argument.

Since the briefing of this motion, the Supreme Court has considered what allegations are necessary to satisfy the jurisdictional requirements of the Sherman Act when a doctor's staff privileges at a hospital were revoked by a peer review board in *Summit Health, Ltd. v. Pinhas,* —— U.S. ——, 111 S.Ct. 1842, 114 L.Ed.2d 366 (1991). In *Summit Health,* a hospital peer-review board terminated the hospital privileges of an ophthalmologist who then brought suit under § 1 of the Sherman Act. The district court dismissed plaintiff's antitrust claim as he did not sufficiently allege that defendants' conduct was in or had a substantial effect upon interstate commerce. The Court of Appeals for the Ninth Circuit reversed the district court and reinstated plaintiff's antitrust claim, finding that hospital peer-review proceedings have an effect on interstate commerce as they affect the entire staff of the hospital. *Pinhas v. Summit Health, Ltd.,* 894 F.2d 1024, 1032 (9th Cir.1989). In affirming the Court of Appeals for the Ninth Circuit, the Supreme Court found that a plaintiff asserting a claim under § 1 of the Sherman Act "need not allege, or prove, an actual effect on interstate commerce to support federal jurisdiction," *Summit Health,* —— U.S. at ——, 111 S.Ct. at 1848. The Supreme Court held that allegations that a hospital, doctors, and others had entered into a conspiracy to exclude an ophthalmologist from the market for ophthalmological services in Los Angeles by revoking his staff privileges at a hospital "ha[d] a sufficient nexus with interstate commerce to support federal jurisdiction." *Id.,* —— U.S. at ——, 111 S.Ct. at 1849.

In the instant case, Dr. Brown alleges that as a cardiothoracic surgeon, his trade "includes patients from interstate, and a trade which has a substantial number of patients whose care is governed under the Medicare and other relevant medical laws of the U.S. Government." Amended Complaint at ¶¶ 63(a), 67(a). While Dr. Brown's allegations are general, they appear to be sufficient to meet the jurisdictional prerequisite to suit under the Sherman Act pursuant to *Summit Health,* —— U.S. at ——, 111 S.Ct. 1842. Like the plaintiff in *Sum-*

*mit Health,* plaintiff was denied staff privileges at a hospital. This court must infer, as did the Supreme Court in *Summit Health,* that such denial would have an effect on the entire staff of the hospital, which in turn would have an effect on interstate commerce. Hence, the court finds that Dr. Brown has sufficiently pleaded facts to establish that defendants' conduct was in or had a substantial effect upon interstate commerce.

### b. *Plaintiff's Request for Additional Discovery*

■ Plaintiff contends that he "remains egregiously disadvantaged to respond to this Motion for Summary Judgment" as defendants have not provided plaintiff with "the full breadth of discovery sought ..." Comments Re: Defendants' Preliminary Statement Omitted From Plaintiff's Response in Error (dated March 1, 1991). He complains that deponents have walked out of depositions and that defense counsel's "endless objections" have hampered his ability to gain complete discovery. Dr. Brown asserts he has had inadequate time to review the one thousand plus transcripts of depositions which he just received. He also maintains that he needs to obtain the medical records of Dr. Grimes and depose Dr. Grimes' widow in order to oppose this motion. *Id.*

The complaint in this action was filed on May 30, 1989. In the first scheduling order, discovery was scheduled to be completed by January 31, 1990. Discovery was extended on numerous occasions. In the final scheduling order dated May 10, 1990, pretrial discovery was extended to August 31, 1990. In the final scheduling order dated October 17, 1990, pretrial factual discovery was extended to November 30, 1990. Plaintiff has deposed many persons in this action, and has received numerous documents. Dr. Brown has requested another extension of the discovery deadline in order to conduct further discovery.

Fed.R.Civ.P. 56(f) allows the district court to deny a motion for summary judgment or order a continuance if the party opposing the motion sets forth by affidavit the reasons why it cannot present facts in opposition to the motion for summary judgment. While plaintiff has not expressly put before the court a Rule 56(f) affidavit, his request for additional time to conduct discovery in order to gather more facts to oppose the summary judgment motion could be construed as a Rule 56(f) request.

The Court of Appeals for the Third Circuit has stated that continuances of motions for summary judgment for the purposes of discovery should be liberally granted when Rule 56(f) affidavits have been filed setting forth specific reasons why party opposing the motion for summary judgment cannot respond to the moving parties' papers. *Mid–South Grizzlies v. National Football League,* 720 F.2d 772, 779 (3d Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2657, 81 L.Ed.2d 364 (1984). The Court of Appeals noted that the reasons offered by the party opposing the motion must be " 'genuine and convincing to the court rather than merely colorable. It is not enough to rest upon the uncertainty which broods over all human affairs or to pose philosophic doubts regarding the conclusiveness of evidentiary facts.' " *Id.,* 720 F.2d at 779 (citations omitted).

Dr. Brown appears to assert that he needs additional discovery to establish "the complex inter-relationships, and consultation referral patterns among these defendants that most assuredly exist (and which can only be proved by an exhaustive investigation beyond the power of the plaintiff to insure)." Comments Re: Defendants' Preliminary Statement Omitted from Plaintiff's Response, in Error (dated March 1, 1991). One of Dr. Brown's specific contentions is that he needs additional time to obtain Dr. Grimes' medical records and to depose Mrs. Grimes in order to oppose this motion; however, as noted above, Dr. Brown is not entitled to discovery of Dr. Grimes' medical records nor is he entitled to depose Dr. Grimes' widow. Hence, this reason is insufficient to continue the motion to allow Dr. Brown additional discovery.

Dr. Brown also complains that defense counsel made frequent objections during depositions and that several persons need

to be redeposed as they walked out of their initial depositions. The witnesses Dr. Brown seeks to redepose, Dr. Noone, Dr. Leese and Dr. Harrer, did appear at depositions as requested by Dr. Brown, and Dr. Brown was given ample opportunity to question these witnesses concerning the subject matter of this lawsuit.

At this juncture, plaintiff has conducted over twenty depositions and has been provided numerous documents. Discovery deadlines have been extended several times, sometimes at plaintiff's request. Plaintiff has been given tremendous leeway in pursuing discovery to establish his claims. After reviewing the extensive history of discovery in this case, the court finds that sufficient discovery has been provided to Dr. Brown to allow him to oppose this motion. He must now come forward with any facts in his possession from which the court could conclude that there is a genuine issue of material fact for trial. Plaintiff has not pointed to any specific, discoverable information which he needs in order to oppose this motion. As plaintiff has failed to satisfy the court that it should exercise its discretion and continue this motion pending further discovery, the court will consider defendants' motion for summary judgment at this time. *See United States v. Donlon*, 355 F.Supp. 220, 225 (D.Del.) *aff'd* 487 F.2d 1395 (3d Cir. 1973); *Chung Wing Ping v. Kennedy*, 294 F.2d 735, 737 (D.C.Cir.), *cert. denied* 368 U.S. 938, 82 S.Ct. 380, 7 L.Ed.2d 337 (1961).

### c. *Plaintiff's Claim under § 1 of the Sherman Act*

Plaintiff claims that defendants have conspired to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1, by denying him medical staff privileges at Our Lady of Lourdes. In order to prevail on his claim under § 1 of the Sherman Act, Dr. Brown must prove that defendants had a "contract, combination . . . or conspiracy, in restraint of trade . . ." 15 U.S.C. § 1, which had an effect on interstate commerce. *Weiss v. York Hosp.*, 745 F.2d 786, 812 (3d Cir.1984), *cert. denied* 470 U.S. 1060, 105 S.Ct. 1777, 84 L.Ed.2d 836 (1985).

In the instant case, defendants contend that they denied Dr. Brown staff privileges at the hospital because he had a personality problem as evidenced by his problems at four other hospitals. *See* DA at 285. They assert Dr. Brown's personality problem would interfere with the hospital's and the doctors' ability to provide quality medical services to patients.

"[T]he use of a hospital's internal review procedures does not imply [an] anticompetitive state of mind. Review procedures are necessary to insure that hospital staff members are competent medical practitioners." *Goss v. Memorial Hosp. System*, 789 F.2d 353, 355 (5th Cir.1986). A medical staff is permitted to exclude an individual doctor based on that doctor's lack of professional competence or unprofessional conduct. When such a reason is offered for the exclusionary conduct, the court must apply the "rule of reason" to evaluate plaintiff's antitrust claim. *Weiss*, 745 F.2d at 820. The court must utilize the rule of reason when considering conduct otherwise subject to *per se* condemnation under § 1 of the Sherman Act due to the public service aspect of the medical profession. *Weiss*, 745 F.2d at 820–21 and cases cited therein. As defendants have offered a public service rationale for their exclusion of Dr. Brown from the medical staff, namely that his personality problem would interfere with patient care, Dr. Brown "must prove that defendants' actions violated Section 1 of the Sherman Act; such violation will not be presumed." *Cooper v. Forsyth County Hosp. Authority, Inc.*, 604 F.Supp. 685, 687 (M.D.N.C.1985) ("*Cooper I*") *aff'd* 789 F.2d 278 (4th Cir.1986). In the context of defendants' motion for summary judgment, plaintiff must come forward with sufficient "evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc.*, 813 F.2d at 618. He must come forward with facts from which a reasonable inference could be drawn that defendants conspired to excluded Dr. Brown from the medical staff of Our Lady

of Lourdes in violation of § 1 of the Sherman Act.[4]

In support of his contention that defendants denied him medical staff privileges at the hospital in violation of § 1 of the Sherman Act, Dr. Brown argues that defendants "had multiple economic interrelationships," DA at 392, which he "presum[ed] ... based on 30 years of 34 years of experience in the medical profession." DA at 394. Dr. Brown stated at his deposition, "I think there are definite interconnecting relationships between these defendant physicians that refer to economics. I think it's naive for anyone of any kind of life experience to say otherwise." DA at 397. He specifically points to the fact that Dr. Brea works as a covering surgeon for Dr. Leese as evidence of an economic incentive to illegally exclude him from practice at Our Lady of Lourdes. Plaintiff's Response to Motion for Summary Judgment. Dr. Leese, according to plaintiff, has an economic incentive to keep him off of the medical staff as his practice involves at least one product, pacemakers, which is the realm of cardiac surgery. *Id.* He claims Dr. Balasundarum wished to exclude him from the hospital staff because Dr. Brown "believe[s] that there's a close association between cardiac surgeons and anesthesiologists, and it's a complex relationship, and I think there are economic motives involved." DA at 391. According to Dr. Brown, Dr. Collier's motivation to keep him off the staff of the hospital was that Dr. Collier "was a member of the hierarchy of the Staff of Our Lady of Lourdes ... he was a senior surgical staff and a long time staff member whom I am certain had multiple economic interrelationships with many of these people on the committees." DA at 394. He presumes that Dr. Grimes had similar economic interrelationships which led him to want to keep Dr. Brown off the medical staff at the hospital. DA at 394. He also notes many of the defendants belong to the Tavistock Country Club which he concludes is "an exclusivity which reasonably had some influence in skewing the objectivity of the 'judges'." Plaintiff's Response to Motion for Summary Judgment. He also alleges that several of the doctors serving on the hospital committees treat each other's families. *Id.* Finally, in support of his argument that summary judgment is inappropriate, he asserts in a conclusory fashion that he "can clearly recognize the abusive use of due process, used as a means to the end, that of restraining trade, and protecting the monopolistic oligarchy of the 'in group', and associated allies of that 'good old boy' network." Comments Re: Defendants' Preliminary Statement Omitted from Plaintiff's Response, in Error at 8.

"Under the rule of reason, the burden of proof in establishing that particular practices are unreasonable restraints of trade rests on the plaintiff; the defendant[s are] not required to prove that the practices are reasonable." ABA Antitrust Section, *Antitrust Law Developments* 15 (2d ed. 1984); *see Doctors Steuer & Latham, P.A. v. Nat. Med. Enterprises Inc.*, 672 F.Supp. 1489, 1503 (D.S.C.1987). After an exhaustive examination of plaintiff's submissions, the court has failed to locate a single fact from which it could be reasonably inferred that defendants engaged in an anticompetitive conspiracy to deprive plaintiff of staff privileges at Our Lady of Lourdes. Accepting plaintiff's factual contentions as true, that the defendants knew each other, belonged to the same country club, covered for one another, treated the members of each other's families, and had complex economic interrelationships, the court cannot reasonably infer, as does Dr. Brown, that the defendants therefore conspired with each other to exclude Dr. Brown from the medical staff at Our Lady of Lourdes. "[M]ere contacts and communications, or the mere opportunity to conspire, among antitrust

**4.** Dr. Brown points to the Supreme Court's decision in *Patrick v. Burget*, 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988) in support of the proposition that medical peer review proceedings are not exempt from federal antitrust laws. This court fully accepts that proposition; however, *Patrick* does not lift the burden remaining with plaintiff to come forward with evidence at this time tending to establish a violation of the federal antitrust laws in order to defeat defendants' motion for summary judgment.

defendants is insufficient evidence from which to infer an anticompetitive conspiracy in the context of the denial of hospital surgical privileges." *Cooper v. Forsyth County Hosp. Auth., Inc.,* 789 F.2d 278, 281 (4th Cir.1986) ("*Cooper II*"), *cert. denied,* 479 U.S. 972, 107 S.Ct. 474, 93 L.Ed.2d 418 (1986). Plaintiff must come forward with "direct or circumstantial evidence that reasonably tends to prove ... a conscious commitment or a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray Rite Serv. Corp.,* 465 U.S. 752, 768, 104 S.Ct. 1464, 1473, 79 L.Ed.2d 775 (1984). The evidence offered by plaintiff to establish an anticompetitive conspiracy must "tend to exclude the possibility of independent action." *Monsanto,* 465 U.S. at 768, 104 S.Ct. at 1473. Plaintiff's effort to establish economic interrelationships among the doctors at the hospital does not "tend to exclude the possibility of independent action," nor does it establish the reason offered by the defendants for his denial of staff privileges—that he had a personality problem— was a pretext to disguise their anticompetitive purpose. As Dr. Brown has failed to come forward with any facts from which " 'reasonably tends to prove a conscious commitment to a common scheme' designed to restrain trade," *Cooper II,* 789 F.2d at 281 (citation omitted), the court will grant summary judgment to defendants on plaintiff's claim pursuant to § 1 of the Sherman Act.[5]

### d. *Monopoly in Violation of § 2 of the Sherman Act*

■ Plaintiff also contends that defendants formed a monopoly to prevent plaintiff from operating his trade in violation of § 2 of the Sherman Act. 15 U.S.C. § 2. In order to prevail on a claim under § 2 of the Sherman Act, plaintiff must demonstrate defendants "monopolize[d] or attempt[ed] to monopolize ... any part of the trade or commerce among the several States ..." 15 U.S.C. § 2. The elements of monopoly under § 2 are: "(1) possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Houser v. Fox Theatres Management Corp.,* 845 F.2d 1225, 1229 (3d Cir. 1988), *quoting United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966).

■ In the case at bar, the plaintiff contends that Our Lady of Lourdes exercises monopoly power in the field of cardiothoracic surgery in "South Jersey." The relevant market "has two dimensions—product and geographic." *Robinson v. Magovern,* 521 F.Supp. 842, 877 (W.D.Pa.1981), *aff'd,* 688 F.2d 824 (3d Cir.), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). For the purposes of this motion, the court will accept that the relevant product is cardiothoracic surgery. In order to prevail at trial, plaintiff must establish the relevant geographic market for cardiothoracic surgery, and that defendants exercised market dominance in that geographic market.

"[T]he geographic market inquiry focuses upon that geographic area within which the defendant's customers affected by the challenged practice can practicably turn to other sellers for supplies, in the even that the defendant seeks to raise its prices or restrict output." W. Holmes, *Antitrust Law Handbook* (1991 ed.) at 295, *citing United States v. Philadelphia Nat'l Bank,* 374 U.S. 321, 359, 83 S.Ct. 1715, 1739, 10 L.Ed.2d 915 (1963). Hence, in this case, the court must consider in which geographic region patients seeking cardiothoracic surgery at Our Lady of Lourdes could practicably turn to procure cardiothoracic surgery if Our Lady of Lourdes (and the other

---

5. The court will address plaintiff's failure to come forward with evidence of the relevant geographic market and defendants' ability to exert market dominance in that market in conjunction with its discussion of plaintiff's claim pursuant to § 2 of the Sherman Act. Nevertheless, the court's holdings concerning those topics apply with equal force as to plaintiff's claim pursuant to § 1, *see Doctors Steuer & Latham, P.A.,* 672 F.Supp. at 1503–04, and constitute additional grounds upon which the court grants summary judgment to defendants as to plaintiff's claim under § 1 of the Sherman Act.

defendants) sought to restrict its output of cardiothoracic surgery.

Dr. Brown has failed to present any evidence from which the court could determine what the relevant geographic market is. In Dr. Brown's answers to interrogatories, he asserts that the relevant market for his claim under § 2 of the Sherman Act is "the geographic area of Southern New Jersey." DA at 592. Defendants argue that plaintiff has failed to come forward with facts to define what he means by "South Jersey" or with facts demonstrating that "South Jersey" is the appropriate market in which to analyze this case, particularly as Our Lady of Lourdes is in close proximity to the City of Philadelphia and its numerous hospitals. The court takes judicial notice that Our Lady of Lourdes is only a few minutes drive from Philadelphia, seriously calling into question plaintiff's contention that the relevant geographic market is "South Jersey" to the exclusion of Philadelphia. In fact, in opposition to defendants' motion for summary judgment, Dr. Brown submitted a photocopy of Our Lady of Lourdes' Physician Directory which contains a map indicating the service area of the hospital. That map indicates that Philadelphia is ten minutes away from the hospital, that Wilmington is 55 minutes away as is Trenton, that Atlantic City is 50 minutes away, and that Cape May is 90 minutes away from the hospital. On top of the photocopy of the Physician Directory, Dr. Brown typed, "the Plaintiff had a potential for an enormous practice of surgery in the tri-state area ..." Dr. Brown's failure to come forward with evidence demonstrating the relevant geographic market alone is fatal to plaintiff's claim under § 2 of the Sherman Act, and the court will enter summary judgment in favor of defendants.

In addition, there is even a more significant defect to the evidence offered by plaintiff as to his claim pursuant to § 2 of the Sherman Act. Plaintiff has failed to come forward with facts demonstrating defendants' ability to exert market dominance in the field of cardiothoracic surgery in the relevant geographic area. From plaintiff's own submission to the court, Our Lady of Lourdes is near other major metropolitan areas, all with several hospitals. Plaintiff has presented no evidence of defendants' ability to exert market dominance in any geographic region. It is important to recall that the evil from which Congress intended to protect against in § 2 of the Sherman Act is monopoly power. "Monopoly power is defined as 'the power to control prices or exclude competition'" within the relevant market. *Houser,* 845 F.2d at 1230, *quoting United States v. E.I. duPont de Nemours & Co.,* 351 U.S. 377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956). If plaintiff fails to establish defendants' power to control prices or exclude competition, his monopoly claim must fail. Here, even if the court accepts Dr. Brown's conclusion that the relevant geographic market is "South Jersey", plaintiff must come forward with facts demonstrating the defendants have market dominance in the "South Jersey" area. The court cannot simply assume that defendants do have market dominance—plaintiff must prove it.[6]

In various submissions to the court, Dr. Brown has asserted that there are only three hospitals in "South Jersey" performing cardiothoracic surgery, and that Our Lady of Lourdes is one of them. He has not submitted an affidavit in support of this contention, nor has he submitted an expert report.[7] He has not presented any information as to the number of cardiotho-

---

**6.** Plaintiff claims that his failure to present such evidence "is, in part, a consequence of the thwarted discovery, 'walk out' depositions." Affidavit by Plaintiff in Response to Motion for Summary Judgment. It does not appear, however, that plaintiff ever sought market dominance information during discovery.

**7.** Dr. Brown did submit a letter from Verner S. Waite, M.D., F.A.C.S., the Executive Secretary of the Senmelweis Society which Dr. Brown calls

an expert report. In that letter, Dr. Waite makes general comments on medical peer review procedures in the United States. He does not comment on the procedures utilized by defendants, nor does he provide any information concerning the relevant geographic market or defendants' ability to exert market dominance. This letter does not raise a genuine issue of material fact.

racic surgeries taking place at Our Lady of Lourdes as opposed to the other two hospitals which he contends perform that type of surgery. Hence, as Dr. Brown has not presented sufficient evidence from which the court could conclude that defendants do have market dominance in "South Jersey," and, as the court noted above, it is highly suspect that "South Jersey" is the relevant geographic market in any case. As plaintiff has presented no evidence demonstrating defendants' ability to exert market dominance, there is no genuine issue of material fact for trial. For this additional reason, the court will grant defendants' motion for summary judgment as to plaintiff's claim pursuant to § 2 of the Sherman Act.

#### e. *Defendants' Other Arguments*

Defendants raise other arguments concerning plaintiffs' antitrust claims; however, given the court's holdings discussed above, it is unnecessary to address those additional contentions.

### 2. Plaintiff's Due Process Claim

While not expressly listed as a count within the complaint, plaintiff's *pro se* complaint can be fairly read to contain a due process claim as plaintiff makes frequent reference to "due process" in his complaint and in all the pleadings before the court. For example, plaintiff alleges in his complaint that defendants "... have intentionally violated Plaintiff's constitutional rights by depriving him of his right to practice in his trade/profession/specialty without due process of law and without fundamental fairness ..." Amended Complaint at ¶ 26; *see also* Amended Complaint at ¶ 63(b). He claims that his trade "has a substantial number of patients whose care is governed under the Medicare and other relevant medical laws of the U.S. Government." Amended Complaint at ¶¶ 63(a), 67(a). As plaintiff claims his constitutional right to due process was violated, the court will interpret his complaint as containing a claim brought pursuant to 42 U.S.C. § 1983.

Defendants argue plaintiff cannot recover under 42 U.S.C. § 1983 as plaintiff has failed to demonstrate how any deprivation of his due process rights was the result of state action. Plaintiff counters that defendants and the defendant hospital receive a substantial amount of funding from the government, there is a large amount of regulation of the medical industry, and the state has licensed defendants.[8]

In order to recover pursuant to 42 U.S.C. § 1983, plaintiff must demonstrate that he was deprived of his constitutional right under color of state law. The deprivation must have been by "state action." *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Before defendants' conduct can be considered state action, there must be a sufficient nexus between defendants' acts and the state from which it could be inferred that defendants' conduct was "fairly attributable to the State." *Id.*, 457 U.S. at 838, 102 S.Ct. at 2770. The fact that defendants may have received government subsidization and that the state may license hospitals and the medical profession does not mean that the actions of defendants constitute state action. *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). The fact that a hospital receives substantial state funding is insufficient standing alone to find state action. *See e.g. Pao v. Holy Redeemer Hosp.*, 547 F.Supp. 484, 492 (E.D.Pa.1982). The *state* must have been responsible for the decision of which plaintiff complains before he can recover pursuant to § 1983. *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785. In this case, plaintiff has presented no evidence that there was any state involvement in any of defendants' action of which he complains. As a result, the court concludes that there was no state action in defendants' determination to deny Dr. Brown medical staff privileges. As a result, the

---

**8.** Plaintiff cites *Patrick v. Burget*, 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988) for the proposition that state action is implicated in a medical peer review proceeding. Plaintiff mis-

understands the importance of *Patrick* as it dealt with state antitrust immunity, not whether there was state action pursuant to § 1983.

court must grant summary judgment to defendants on plaintiff's claim that his constitutional due process rights were violated.

### 3. Plaintiff's State Law Claims

 Plaintiff's complaint may be read to state a claim for the violation of his due process rights protected by state law as plaintiff contends in his pleadings that defendants did not follow Our Lady of Lourdes' own by-laws when they denied him staff privileges or the state requirements for peer review proceedings. Plaintiff's pleadings also make frequent reference to defamation and slander. As noted earlier in this opinion, plaintiff filed a parallel action in state court to assert his claims under state law. As there is no diversity of citizenship between the parties and the court has dismissed plaintiff's federal claims, particularly since plaintiff has already filed an action in state court, the court will decline to exercise pendent jurisdiction over plaintiff's state law claims.

## IV. CONCLUSION

Dr. Brown may well be an excellent cardiothoracic surgeon. The defendants may have completely erroneously found that Dr. Brown had a personality problem which would interfere with patient care at Our Lady of Lourdes. Nevertheless, even if defendants made a mistake by denying Dr. Brown medical staff privileges at the hospital, such mistake does not constitute a violation of the federal antitrust laws or a deprivation of Dr. Brown's federal constitutional rights.

For the reasons discussed above, the court affirms the Magistrate Judge's orders of November 9, 1990 and December 27, 1990, and grants defendants' motion for summary judgment on all counts. Plaintiff is free to pursue his state law claims in the action he currently has pending in state court.