Loren G. GOSS, Plaintiff-Appellant,

v.

MEMORIAL HOSPITAL SYSTEM, et al., Defendant-Appellee.

No. 85–2170.

United States Court of Appeals,
Fifth Circuit.

May 14, 1986.

Eugene B. Wilshire, Jr., Patrick J. Dyer, Houston, Tex., for plaintiff-appellant.

Tom A. Cunningham, Houston, Tex., Murray Fogler, Sarah B. Duncan, Austin, Tex., for Memorial Hosp. System, et al.

Richard Sheehy, Donald B. McFall, Cook, Davis & McFall, Houston, Tex., for Marks, Matthews, Humana, Inc. et al.

Before GEE, RUBIN and DAVIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellant is a physician who specializes in the practice of obstetrics and gynecology in Houston, Texas. He enjoyed staff privileges at Memorial Southwest Hospital (Memorial), which is operated by appellee, Memorial Hospital System, and courtesy staff privileges at Sharpstown General Hospital (Sharpstown), which is operated by appellee, Humana, Inc.

In October 1980, the chief of Memorial's Ob-Gyn section received a written complaint regarding appellant's competency. This triggered an investigation and multiple hearings under Memorial's by-laws. Following these meetings, the Board of Trustees of Memorial in January 1981 approved a recommendation of the Ob-Gyn section to suspend appellant's staff privileges through December 1981 and not reappoint him to the medical staff. Several months later, Sharpstown suspended appellant's courtesy staff privileges on the basis of a medical peer review committee's findings reflecting adversely on appellant's

competence. After his suspensions, appellant's patients at both hospitals were assigned to appellee, Dr. Marco, who, along with appellees Drs. Novick, Kaeppel, and Matthews, practiced in Memorial's obstetrics and gynecology section which voted to suspend Goss. Appellee Dr. Crump was Chief of Staff of Memorial.

Goss alleged that the defendants conspired to boycott him from practicing his profession and that they were motivated by a desire to eliminate him as a competitor in violation of sections 1 and 2 of the Sherman Act. Appellant also alleged that appellees denied him his constitutional right of due process while acting under the color of state law in violation of 42 U.S.C. § 1983. The district court granted appellees' motions for summary judgment on the antitrust claims; it held that the *per se* rule was inapplicable to the group boycott alleged and that the summary judgment evidence failed to reveal an antitrust violation under the rule of reason analysis. The district court also dismissed plaintiff's section 1983 claim for lack of state action. After disposing of the federal claims, the district court dismissed several pendent state claims for lack of federal jurisdiction. We find no error and affirm.

## ANTITRUST CLAIM

Appellant contends that by using the hospitals' internal procedures, appellees, in restraint of trade, conspired to boycott him from practicing in Memorial and Sharpstown hospitals. The only complaint appellant levels at the district court's dismissal of his antitrust action under section 1 of the Sherman Act is its failure to apply the *per se* rule.[1] Appellant concedes that the district court properly found no antitrust violation under a rule of reason analysis.

Depending on the nature of the case, two different forms of analyses are used to determine whether a business practice violates section 1 of the Sherman Act:[2] the

rule of reason and the *per se* rule. *United States v. Topco Associates, Inc.,* 405 U.S. 596, 607, 92 S.Ct. 1126, 1133, 31 L.Ed.2d 515 (1972).

Under the rule of reason analysis, "the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Continental T.V., Inc. v. GTE Sylvania, Inc.,* 433 U.S. 36, 49, 97 S.Ct. 2549, 2557, 53 L.Ed.2d 568 (1977). To make this determination, the court examines " 'the facts peculiar to the business, the history of the restraint, and the reasons why it was imposed,' as well as the actual impact of this restraint on competition." *Hornsby Oil Co., Inc. v. Champion Spark Plug Co., Inc.,* 714 F.2d 1384, 1392 (5th Cir.1983) (quoting *National Society of Professional Engineers v. United States,* 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978)).

If the *per se* rule applies to the practice at issue, the court presumes that the practice is unreasonable as a matter of law " 'without elaborate inquiry as to the precise harm [it has] caused or the business excuse for [its] use.' " *United States v. Topco Associates, Inc., supra,* 405 U.S. at 607, 92 S.Ct. at 1133 (quoting *Northern Pacific Railway Co. v. United States,* 356 U.S. 1, 5, 78 S.Ct. 514, 518, 2 L.Ed.2d 545 (1958)). The *per se* rule promotes judicial economy by avoiding the need for the detailed inquiry required by the rule of reason; but courts are reluctant to declare business practices or agreements *per se* illegal and do so only after long experience reveals " 'their pernicious effect on competition and lack of any redeeming virtue....' " *Id.* If the *per se* rule does not apply, the courts use the rule of reason analysis.

Group boycotts have been invalidated as a *per se* violation of section 1 of the Sher-

1. Dr. Goss did not appeal the district court's rejection of his Section 2 claim.

2. Section 1 provides in pertinent part: "Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C.A. § 1 (West 1973).

man Act, *Klor's, Inc. v. Broadway-Hale Stores, Inc.,* 359 U.S. 207, 212, 79 S.Ct. 705, 709, 3 L.Ed.2d 741 (1959), but not every form of group boycott falls within the *per se* category. *Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.,* —— U.S. ——, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985). In *Pacific Stationery,* the Supreme Court dealt specifically with the issue of "defining the category of concerted refusals to deal [group boycotts] that mandate per se condemnation." —— U.S. at ——, 105 S.Ct. at 2619, 86 L.Ed.2d at 211. The plaintiff, a retailer, was summarily expelled from a purchasing cooperative for failing to report a change in its stock ownership as required by cooperative regulations. The plaintiff charged defendants with engaging in a group boycott which it contended should be considered a *per se* violation of section 1 of the Sherman Act. The Court stated that the "plaintiff seeking application of the per se rule must present a threshold case that the challenged activity falls into a category likely to have predominantly anticompetitive effects." —— U.S. at ——, 105 S.Ct. at 2621, 86 L.Ed.2d at 213.

The Court noted first that the expulsion did not imply an anticompetitive state of mind because the rule violated by plaintiff served the useful purpose of allowing the cooperative to monitor its member's creditworthiness. The court then concluded that the lack of market power by the defendants precluded application of the *per se* rule to the alleged group boycott:

> Unless the cooperative possesses market power or exclusive access to an element essential to effective competition, the conclusion that expulsion is virtually always likely to have an anticompetitive effect is not warranted. [Citations omitted]. Absent such a showing with respect to a cooperative buying arrange-

ment, courts should apply a rule of reason analysis.

—— U.S. at ——, 105 S.Ct. at 2621, 86 L.Ed.2d at 213.

■ Similarly, appellant's challenged expulsion from the staffs of Memorial and Sharpstown through the use of the hospitals' internal review procedures does not imply anticompetitive state of mind. Review procedures are necessary to insure that hospital staff members are competent medical practitioners.[3] Also, the summary judgment evidence fails to show that the hospitals possess "market power or unique access to a business element necessary for effective competition." *Id.*

The uncontradicted summary judgment evidence presented by appellees establishes that in 1980 and 1981 respectively, Memorial and Sharpstown were two out of sixty-one and two out of sixty-three hospitals located in Harris County, Texas. Appellant presented no evidence tending to establish that the services offered by Memorial and Sharpstown were unavailable at the other hospitals. Thus no facts were presented that tended to show that the appellee hospitals had "unique access to a business element" needed by appellant to compete with other physicians in his field of practice.

Combined, these two hospitals, in 1980 and 1981 respectively, had 5.88% and 5.61% of the total available hospital beds and 6.79% and 6.61% of the total patient admissions in Harris County. Thus, Memorial and Sharpstown did not possess the "market power" needed to present a threshold case that the alleged boycott by appellees is likely to have anticompetitive effect. *See Jefferson Parish Hospital District No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984). The district court correctly concluded that the *per se* rule is not

3. Goss argues that the defendants expelled him from the staff to drive him out of the profession and to permit some of the defendants to take over his medical practice. Thus, Goss contends the defendants did act in this case with anticompetitive animus. The Court in *Pacific Stationery* considered a similar argument in support of the

application of the *per se* rule and held that "such an argument is appropriately evaluated under the rule of reason analysis." *Northwest Wholesale Stationers, Inc. v. Pacific Stationery and Printing Co.,* —— U.S. ——, —— n. 7, 105 S.Ct. 2613, 2620 n. 7, 86 L.Ed.2d 202, 212 n. 7 (1985).

applicable to the group boycott alleged by appellant.

## SECTION 1983 CLAIM

█ Appellant contends that the appellees' conduct in expelling him from the staffs of Memorial and Sharpstown, both private hospitals, denied him procedural due process actionable under 42 U.S.C. § 1983.[4] The district court granted appellees' motion for summary judgment on this claim on the ground that any deprivation was not a result of state action. Appellant argues that the appellees acted under color of state law by acting under the authority of the Texas Medical Practice Act.[5]

The Texas Medical Practice Act authorizes a medical peer review committee to report its findings of a physician's incompetency to the Texas State Board of Medical Examiners. The peer review committee members receive immunity from civil liability that might result from the report or investigation.[6] Whether the acts of the appellees who served on the peer review committee as authorized by the Texas Medical Practice Act should be considered "state action" requires a nexus between those acts and the state such that appellees' conduct is "fairly attributable to the State." *Rendell-Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2770, 73 L.Ed.2d 418 (1982). This nexus exists when the State "has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." 457 U.S. at 840, 102 S.Ct. at 2771 (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1003, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1982)). Appellant contends that this immunity granted appellees by the State of Texas provided such encouragement to appellees

that the peer review committee acted as an investigatory arm of the state.

A similar argument was rejected by this court in *White v. Scrivner Corp.,* 594 F.2d 140 (5th Cir.1979). In *White,* the plaintiff sued under section 1983 after being detained in the defendant's food store as a suspected shoplifter. The plaintiffs alleged that state action was present because a Louisiana statute permitted defendant to detain persons reasonably believed to be shoplifters without facing civil liability. The court concluded that "the mere existence of the statute" did not result in state action. Similarly, we agree with the district court that the Texas Medical Practice Act did not make the action of appellees state action. *See also Rendell-Baker v. Kohn, supra; Blum v. Yaretsky, supra; Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

AFFIRMED.

---

4. Section 1983 provides in pertinent part:
   "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.
   42 U.S.C.A. § 1983 (West 1981).

5. *See* Tex.Civ.Stat.Ann. Art. 4495b (Vernon Supp.1986).

6. *Id.,* at Subchapter E, § 5.06(f).