Clyde Russell LEWIS, Plaintiff,

v.

Byron LAW–YONE, M.D.,
et al., Defendants.

No. 4:92–CV–886–A.

United States District Court,
N.D. Texas,
Fort Worth Division.

Feb. 22, 1993.

**1248**

Robert Franklin Andrews, Matthew L. Clarke, Gregory Stuart Love, Andrews & Clarke, R.H. Wallace, Jr., Janie L. Frank, Shannon Gracey Ratliff & Miller, Fort Worth, TX, for plaintiff Clyde Russell Lewis.

Tom B. Renfro, Renfro Mack & Hudman, Fort Worth, TX, for defendants Byron Law–Yone, M.D., Leslie NMN Secrest, M.D., Gary NMN Etter, M.D., Ronald Fleischmann, M.D., John M. Zimburean, M.D., Larrie W. Arnold, M.D., Bradford M. Goff, M.D., Angela M. Wood, M.D., William M. Pederson, M.D., Grover Lawlis, M.D., Fred L. Griffin, M.D. and Cris Craig.

Winston L. Borum, Payne & Blanchard, Dallas, TX, for defendants Howard Mark Cohen, M.D. and R. Sanford Kiser, M.D.

Charles Scott Nichols, Schell Nicholas Thompson Beene & Vaughan, Dallas, TX, for defendants David Jacobsen, Sheila Asby, RN, Norma L. Miller, Linda Behrendt, RN, Rosemary Frederickson and Naomi E. Martin.

John Roland Tilly, Strasburger & Price, Dallas, TX, for defendant Dallas Psychiatric Associates.

Bryan J. Maedgen, John Roland Tilly, Strasburger & Price, Dallas, TX, for defendants NME Psychiatric Hospitals Inc., National Medical Enterprises, Inc., Psychiatric Institute of America and John C. Bedrosian.

Joe D. Anderson, Law Offices of Ben H. Tompkins, Dallas, TX, for defendant William C. Whitehead.

### MEMORANDUM OPINION AND ORDER

McBRYDE, District Judge.

Came on to be considered in the above-styled and numbered action the motions of

defendants to dismiss for failure to state a claim upon which relief can be granted. The alleged basis for subject matter jurisdiction in this court are the causes of action asserted by plaintiff, Clyde Russell Lewis ("Lewis"), under 42 U.S.C. § 1983.[1] The motions to dismiss include assertions that the complaint fails to state a claim under § 1983.[2] As to the defendants who have not moved for dismissal based on the inadequacy of the § 1983 allegations, the court notes that it can dismiss a complaint, *sua sponte*, for failure to state a claim upon which relief can be granted. *See Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992); *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883, 887 (5th Cir.1989); *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir.1984). Upon review of the complaint, the motions to dismiss and the response, the court has determined that the complaint fails to state a claim upon which relief could be granted under § 1983, that the alleged §§ 1983 and 1988 causes of action should be dismissed, and that the pendent state law claims should be dismissed without prejudice.

## I.

### Plaintiff's Allegations as they Relate to his § 1983 Claims

Upon the recommendation of his cardiac surgeon, Lewis, who was suffering depression following open-heart surgery, was seen while in the hospital recovering from his surgery by defendant Leslie Secrest, M.D., a psychiatrist associated with Dallas Psychiatric Associates (hereinafter "DPA"). The surgeon and Dr. Secrest arranged for Lewis' admission to defendant Brookhaven Psychiatric Pavilion (hereinafter "Brookhaven"), a private psychiatric hospital. DPA and Brookhaven had an arrangement pursuant to which the psychiatrists associated with DPA provided psychiatric services to the inpatients at Brookhaven.

When Lewis called Brookhaven about his planned admission, he discussed with defendant Jane Zoe (hereinafter "Zoe"), an employee of Brookhaven, his expectations if admitted, *i.e.* that he would be treated by Secrest while at Brookhaven and that during his hospitalization he would have repeated contact with his family, including passes to go home, he would have a social worker to work with him and his family, and he would have communication with his family by telephone. Once he received assurances that his expectations would be met, he provided Zoe with insurance information. Based on the assurances and representations of Zoe, Lewis voluntarily admitted himself to Brookhaven on January 15, 1991, when he signed admission papers and was again given assurances that his expectations as a patient at Brookhaven would be met. In one of the papers he signed he agreed:

> to submit myself to the custody of said Brookhaven Psychiatric Pavilion of the RHD Memorial Medical Center for diagnosis, observation, care and treatment provided by Dallas Psychiatric Associates, A Partnership; to remain in said Brookhaven Psychiatric Pavilion of the RHD Memorial Medical Center until I am discharged or until the expiration of ninety-six (96) hours after written request for my release is filed with the head of said Psychiatric Pavilion, signed by myself or someone on my behalf and with my consent. . . .

Complaint in No. 4:92–CV–886–A, Exhibit "A".

According to Lewis' allegations, between the time of his admission to Brookhaven and his discharge on January 28, 1991, he was mistreated in many respects, the assurances made to him before his admission were not fulfilled and representations made

1. Lewis also asserts a claim under 42 U.S.C. § 1988, but it is entirely dependent on viability of the § 1983 claim.

2. The motions also seek dismissal of pendent state law claims that are asserted in the complaint, which are subject to dismissal if the court's jurisdiction is not sustained by the alleged § 1983 causes of action. *See* 28 U.S.C. § 1367(c)(3).

to him by Zoe proved to be false, requests he made for discharge were not honored, and he was persuaded on three occasions to withdraw a "96–hour letter" he had given to express his desire to leave the hospital. Lewis alleged that at no relevant time was he incompetent to determine his own course of health care, but that, nevertheless, while in Brookhaven he was repeatedly denied requests concerning his care. He alleged that he was threatened that he would be ordered committed to Brookhaven by the Probate Court System of Dallas County, Texas, if he were to attempt to leave or did not retract his requests for discharge. The event that prompted Lewis' discharge on January 28 was, according to Lewis' allegations, the receipt by Brookhaven of information that Lewis' insurance company would not pay for his hospitalization. Lewis alleged that the treatment he received at Brookhaven was not for his benefit but was determined by actual or anticipated availability of insurance benefits, and to the end of maximizing the financial benefits to Brookhaven, DPA, and other defendants.

The forty defendants named by Lewis are individuals and entities related to the ownership and operation of Brookhaven, employees or staff members of Brookhaven, partners of DPA, or psychiatrists associated with or employees of DPA. Lewis alleged that all defendants were part of a scheme, joint action, or conspiracy designed and intended to deprive him of rights guaranteed to him under the Constitution and laws of the United States of America.

## II.

### *Plaintiff's § 1983 Allegations*

Lewis' 42 U.S.C. § 1983 allegations are that:

57. During all times mentioned herein, [all defendants] acted under color of law, specifically under color of the statutes, ordinances, regulations, customs and usages of the State of Texas, and the conduct of the Defendants in detaining PLAINTIFF at Defendant BROOKHAVEN is fairly attributable to the State.

58. Defendants BROOKHAVEN, PIA, NME, LAW–YONE, SECREST and JACOBSEN were state actors because they were delegated a broad power to admit patients to a mental health institution, and to effect a deprivation of liberty of those patients under Texas statutes. Because Defendants BROOKHAVEN, PIA, NME, LAW–YONE, SECREST and JACOBSEN had state authority to deprive persons of liberty, the United States Constitution imposes on them the state's concomitant duty to see that no such deprivation occurs without constitutional protection. *See Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

59. In furtherance of this scheme, joint action, or conspiracy, [all defendants] committed the overt acts alleged above, among others.

60. In doing the acts and things complained of above, [all defendants] were conspirators or joint actors engaged in a scheme or conspiracy designed and intended to deprive PLAINTIFF of rights guaranteed to him under the constitution and laws of the United States of America as hereinafter enumerated. Those [defendants] alleged to be state actors above involved the additional [defendants], including any [defendant] alleged to be a state actor not found by the Court to be a state actor, and other parties presently unknown to PLAINTIFF in furtherance of this scheme, joint action, or conspiracy.

61. PLAINTIFF has been subjected by the above recited acts to the deprivation by [all defendants], under color of law of the State of Texas, of rights, privileges and immunities secured to her [sic] by the Constitution and laws of the United States of America and of the State of Texas, particularly, his right of security of person, freedom from unreasonable searches and seizures, and freedom from arrest except on probable cause supported by oath or affirmation, guaranteed by the Fourth Amendment to the *Constitution* of the United States of America, his right not to be deprived of liberty without due process of law, guar-

anteed by the Fifth and Fourteenth Amendments to the *Constitution of the United States of America.*

62. As a direct and proximate result of the acts of [all defendants] PLAINTIFF was deprived of his liberty, was punished for speaking freely, was deprived of basic human dignity, was caused to suffer anxiety, mental suffering and humiliation, had his privacy invaded, was frightened, suffered damage to his mental health, and was deprived of free association with his family.

Complaint at 48–50.

Notwithstanding the general "statutes, ordinances, regulations, customs and usages of the State of Texas" language used in paragraph 57, the only state laws upon which Lewis relies in support of his "color of state law" theories are Tex.Rev.Civ.Stat. Ann. arts. 5547–22 to –25 (Vernon Supp. 1990),[3] which read as follows:

**Art. 5547–22. Voluntary admission**

(a) The head of a facility or his authorized, qualified designee may admit to inpatient mental health services on a voluntary basis any person for whom a proper request for admission is filed, if he determines upon the basis of a preliminary examination that the person has symptoms of mental illness and will benefit from the services. Further, the head of the facility must determine that the person has been informed about the rights of voluntary patients, as provided in Section 25 of this code, and that the person, or the parent, managing conservator, or guardian, if the person is under the age of 16, as provided in Section 23 of the code, voluntarily agrees to admission.

(b) A minor 16 years of age or older may be admitted to voluntary in-patient mental health services without the consent of the parent, managing conservator, or guardian.

**Art. 5547–23. Request for Voluntary Admission for In–Patient Care**

(a) Request for Voluntary Admission of a person to an in-patient mental health

facility as a voluntary patient shall be in writing and filed with the head of the mental health facility to which admission is sought and:

(1) shall be signed by the person, if the person is 16 years of age or older; or

(2) shall, if the person is under the age of 16 years be signed by the parent, or by the managing conservator if one has been appointed, or by the guardian if one has been appointed; and

(3) shall state that the person will voluntarily remain in the mental health facility until the person is discharged and that the person is consenting to the diagnosis, observation, care, and treatment provided until he is discharged or until the expiration of 96 hours after written request for his release is filed by the patient or other person responsible for the patient's admission with the head of the mental health facility. The patient or other person filing a request for release of the patient shall be notified that he or she assumes all responsibility for the patient upon discharge.

(b) A person or agency appointed as a guardian or managing conservator, in its capacity as an employee or agent of the State of Texas or a political subdivision thereof may request voluntary admission of a minor under the age of 16 years only with that minor's consent.

(c) If sufficient time is available prior to a person's release from voluntary inpatient mental health services, a plan for continuing care shall be developed in the same manner as provided in Section 67 of this code for involuntary patients.

**Art. 5547–24. Application for Court–Ordered Mental Health Services During Voluntary In–Patient Care**

No Application for Court–Ordered Mental Health Services may be filed for the commitment of a voluntary patient in in-patient care unless a request for his release has been filed with the head of the facility or unless in the opinion of the head of the facility he meets the criteria

---

**3.** Lewis relies on a version of these statutes that was revised before his stay at Brookhaven. *See* Complaint at 19. The version in effect at perti-

nent times is set forth in the body of this memorandum opinion and order.

for court-ordered mental health services and:

(1) he is absent without authorization; or

(2) he refuses or is unable to consent to appropriate and necessary psychiatric treatment.

**Art. 5547–25. Rights of Voluntary Patients Admitted for In–Patient Care**

(a) Every voluntary patient in an inpatient mental health facility has the following rights:

(1) the right to leave the mental health facility within 96 hours, after filing with the head of the mental health facility or his designee a written request for release, signed by the patient or other person responsible for the patient's admission unless prior to the expiration of the 96–hour period:

(A) written withdrawal of the request for release is filed; or

(B) an application for court-ordered mental health services or emergency detention is filed and the patient is detained in accordance with the provisions of this code;

(2) the right of habeas corpus, which is not affected by admission to a mental health facility as a voluntary patient;

(3) the right to retain civil rights and legal capacity, which are not affected by admission to a mental health facility as a voluntary patient;

(4) the right to periodic review of his need for continued in-patient treatment;

(5) the right not to have an application for court-ordered mental health services filed while he is a voluntary patient unless in the opinion of the head of the facility he meets the criteria for court-ordered services and he is either absent without authorization or he refuses or is unable to consent to appropriate and necessary psychiatric treatment;

(6) the rights of patients set forth in Sections 80 and 81 of this code; and

(7) the right, within 24 hours of admission, to be informed orally in simple, nontechnical terms of these above-listed rights. In addition, the person shall be informed in writing of these same above-

listed rights, in his primary language if possible. The above-listed rights shall be communicated to a hearing and/or visually impaired person through any means reasonably calculated to communicate these rights. The same explanation shall be given to the parent, guardian, or managing conservator of a minor.

(b) In addition to the rights provided by Subsection (a) of this section, the department shall notify each adult patient of the patient's right to have the department notify his family prior to discharge or release if the patient grants permission. If the patient grants permission for notification, the department or facility shall make a reasonable attempt to give the patient's family prior notice of the patient's release or discharge.

Lewis maintains that those regulatory statutes caused the defendants who were regulated by the statutes to be state actors. *See* Complaint at 19–20, 48–50.

### III.

#### *Motion to Dismiss Standard*

 A court may dismiss a claim for failure to state a claim upon which relief can be granted if it appears, beyond doubt, that a plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Kaiser Aluminum, & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). In making such a determination, the court accepts, as true, all well pleaded facts and construes the complaint liberally in favor of the plaintiff. *Kaiser*, 677 F.2d at 1050. To be "well-pleaded", a complaint alleging violation of § 1983 must state specific facts to support the claim, not merely legal and constitutional conclusions. *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.), *cert. denied*, 498 U.S. 908, 111 S.Ct. 279, 112 L.Ed.2d 233 (1990). Conclusory allegations are not accepted as true in evaluating whether a

claim has been stated. *Kaiser*, 677 F.2d at 1050.

## IV.

### *The Facts Alleged in the Complaint Do Not State A Violation of § 1983*

As noted, Lewis' sole basis for invoking the jurisdiction of this court is his allegation of claims based upon 42 U.S.C. § 1983.[4] A plaintiff claiming a § 1983 violation must establish that (i) the defendant has deprived the plaintiff of a right secured by the Constitution and the laws of the United States, and (ii) the defendant acted under "color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." *See* 42 U.S.C. § 1983; *see also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732, 56 L.Ed.2d 185 (1978).

■ The court first considers the issue of whether a deprivation of plaintiff's rights, as secured by the Constitution and laws of the United States, occurred. Involuntary commitment to a mental hospital implicates the liberty interests protected by the due process clause of the Fourteenth Amendment. *See Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir.1992); *Dahl v. Akin*, 630 F.2d 277, 279 (5th Cir.1980), *cert. denied*, 451 U.S. 908, 101 S.Ct. 1977, 68 L.Ed.2d 296 (1981). Even though Lewis voluntarily committed himself to Brookhaven, the court is unwilling to conclude that Lewis can prove no set of facts to establish that his liberty interests were violated. Taking all of Lewis' well-pleaded facts as true, including his allegations that his requests for discharge from Brookhaven were denied, the court determines that Lewis has pleaded facts that survive a Rule 12(b)(6)[5] analysis as to the first requirement of a § 1983 claim.

■ With respect to the second requirement, *i.e.*, whether the defendant acted "under color of state law", its satisfaction depends on whether the alleged infringement of rights was "fairly attributable" to the state. *See Lugar v. Edmundson Oil Co., Inc.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). The "fair attribution" test requires the court to consider (i) whether the deprivation of rights was caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state or by a person for whom the state is responsible and (ii) whether the party charged with the deprivation is a person who may fairly be said to be a state actor. *Lugar*, 457 U.S. at 937, 102 S.Ct. at 2753. When discussing the reasoning behind the test, the Supreme Court said:

> Without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing interactions with the community surrounding them.

*Id.*

■ As to the first element of the "fair attribution" test, taking all of plaintiff's well-pleaded facts as true, the court doubts that the conclusion can be reached that Lewis suffered a deprivation of constitutional rights by reason of the exercise of a right or privilege created by the Texas statutes on which Lewis relies. The statutes did not empower Brookhaven, or any of the defendants, to make false representations to Lewis or to treat or detain Lewis inappropriately. Rather, the statutes merely regulate, for the protection of Lewis and similarly situated patients, the conduct of Brookhaven in relation to a voluntary admission by defining procedures to be followed at the time of and after the admission. However, a decision as to

---

**4.** Section 1983 reads, in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immuni-

ties secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.

**5.** The motions to dismiss were made under the authority of Fed.R.Civ.P. 12(b)(6).

whether the first element exists is not essential to the ultimate rulings of the court.

The more vital question to be considered in making the "fair attribution" determination in this action is whether Lewis has sufficiently pleaded facts supporting his claim that defendants were functioning as state actors. Unless he has, his § 1983 claims against all the defendants must fail. Even if his constitutional rights were violated, the Fourteenth Amendment "erects no shield against merely private conduct, however discriminatory or wrongful." *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 2785, 73 L.Ed.2d 534 (1981). A private party can be held to be a state actor under only three circumstances, (i) where there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the party may be fairly treated as that of the state itself, (ii) where the private party has exercised powers that are "traditionally the exclusive prerogative of the state," or (iii) where the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the action of the private party must in law be deemed to be that of the state. *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785; *see also Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 357, 95 S.Ct. 449, 456, 42 L.Ed.2d 477 (1974).

### A. *Nexus Test:*

■ A private party can be held to be a state actor when "there is a sufficiently close nexus between the state and the challenged action of the private party so that the action of the private party may be fairly treated as that of the state itself." *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785; *Jackson*, 419 U.S. at 351, 95 S.Ct. at 453. The purpose of the "nexus test" is to ensure that constitutional standards are invoked only when a court can determine that the state is responsible for the specific conduct. *See Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785. The Supreme Court has consistently held that extensive regulation by the state does not create a sufficient relationship between the state and a private party to cause the private party to become a state actor. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 842, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982); *see also Blum*, 457 U.S. at 1011, 102 S.Ct. at 2789.

■ Actions of a private party satisfy the nexus test only when the government has "so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Harvey*, 949 F.2d at 1131 (quoting *National Broadcasting Co. v. Communication Workers of America, AFL–CIO*, 860 F.2d 1022, 1026 (11th Cir.1988)). Taking all of plaintiff's well-pleaded facts as true, the court cannot conclude, by application of the nexus test, that any of the defendants was functioning as a state actor. There has been no pleading of facts showing the requisite insinuation. The only pleaded relationship between defendants and the state was the existence of the voluntary commitment statute. The mere existence of a state statute does not automatically result in state action. *See Goss v. Memorial Hosp. Sys.*, 789 F.2d 353, 356 (5th Cir.1986).

### B. *Public Function Test:*

■ The court next considers whether the alleged state actor defendants have performed functions or received powers that are traditionally the exclusive prerogative of the state. *See Jackson*, 419 U.S. at 353, 95 S.Ct. at 454; *Harvey*, 949 F.2d at 1131. Few activities are exclusively reserved to the states. *See Flagg Bros.*, 436 U.S. at 158–59, 98 S.Ct. at 1734–35. Examples are the running of elections and the governing of company towns. *Id.; see also White v. Scrivner Corp.*, 594 F.2d 140, 142 (5th Cir.1979). Courts generally have been unwilling to place within this narrow exception to the state action rule the commitment of individuals to private mental hospitals. *See Harvey*, 949 F.2d at 1131; *see also Spencer v. Lee*, 864 F.2d 1376, 1381 (7th Cir.1989), *cert. denied*, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). In refuting an argument that such a commitment was a public function, the court in *Harvey* noted:

At most, the Georgia statute functions as a licensing provision enabling the hospital to receive mental patients; licensing and regulation are not enough to transform private hospitals into state actors for Section 1983 purposes.

*See Harvey,* 949 F.2d at 1132.[6] The voluntary admission of Lewis to Brookhaven and the subsequent determinations by defendants to detain Lewis are not functions exclusively reserved to the State of Texas.

While persons can be committed to a state-owned hospital, or pursuant to a state court's order, such possibilities do not transform civil commitment into a function exclusively reserved to the State. In *Spencer,* an action involving a private involuntary commitment, the court rejected the plaintiff's public function argument by stating,

> But, a private commitment is no more state action than a citizen's arrest, the repossession of chattels, or the ejection of trespassers is. The statutes authorizing or constraining these private activities may or may not be constitutional ... the activities themselves remain private....

*Spencer,* 864 F.2d at 1381.

C. *State Coercion or Encouragement:*

■■■ The final means by which a private party can be held to have functioned as a state actor occurs when the state has "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state." *Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785; *Flagg Bros.* 436 U.S. at 166, 98 S.Ct. at 1738; *see also Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1971). Lewis apparently asserts that the state, through the voluntary commitment statutes, provided such significant en-

couragement to defendants that their actions were deemed to be actions of the state. The court, however, again refuses to conclude that the mere existence of the voluntary commitment statutes results in the transformation of defendants into state actors. With respect to such an argument, the court in *Harvey* noted,

> [T]he Georgia statutes neither compel nor encourage involuntary commitment, precluding Charter's becoming a state actor by state compulsion.... Mrs. Harvey cannot seriously allege that the "relevant provisions of the mental health code were enacted because the state wants to encourage commitments, any more than the state repossession laws are passed because the state wants to encourage creditors to repossess their debtors' goods."

*See Harvey,* 949 F.2d at 1130–31 (quoting *Spencer,* 864 F.2d at 1379). Similarly in *Goss,* the Fifth Circuit concluded that the powers granted to doctors under the Texas Medical Practices Act to review the competence of other physicians did not result in state action by the defendants as a result of their performance of such a function. *See Goss,* 789 F.2d at 356. Merely because a state provides a scheme by which private parties can effectuate a process does not mean that the private parties become state actors by implementing such a process.

After Lewis clearly alleges that he was voluntarily admitted to Brookhaven, he asserts that defendants deprived him of his liberty interests by detaining him. Even accepting as true his allegations that the staff and doctors at Brookhaven improperly refused to release him despite his repeated requests, the court cannot conclude that those private decisions rose to the level of state action. In *Blum,* the Supreme Court, when considering similar ar-

---

**6.** Plaintiff relies upon *Rubenstein v. Benedictine Hosp.,* 790 F.Supp. 396, 406 (N.D.N.Y.1992), for the proposition that the commitment of mental patients according to state law falls within the public function test. In *Rubenstein,* the district court concluded that the New York statutory scheme for commitment was so pervasive and detention of individuals was so traditionally a function of the state, that the private hospital and individual doctors were acting under color of state law. *Rubenstein,* 790 F.Supp. at 406. In light of the Supreme Court holding in *Jackson,* as well as Court of Appeals' holdings such as *Harvey* and *Spencer,* this court is unwilling to extend the public function test to include commitment of mental health patients to private hospitals.

guments with regard to the nursing home doctors' decision to transfer patients, stated,

> These regulations do not require the nursing homes to rely on the forms in making discharge or transfer decisions, nor do they demonstrate that the state is responsible for the decision to discharge or transfer particular patients. Those decisions ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State.

*Blum,* 457 U.S. at 1008, 102 S.Ct. at 2788.

In the complaint, Lewis relies on *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1989), for the proposition that defendants functioned as state actors by detaining him at Brookhaven against his will. The court notes that the Supreme Court opinion in *Zinermon* dealt solely with defendants who were clearly state officials, not private parties. In *Burch v. Apalachee Community Mental Health Servs., Inc.,* 840 F.2d 797, 803 (11th Cir. 1988), *aff'd, Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), the Eleventh Circuit concluded that a private hospital was liable under § 1983 because its actions were "fairly attributable to the state because only by being clothed with the authority of state law did the appellees possess the power to commit a person to a mental institution." However, that conclusion does not support Lewis because, as was discussed in *Harvey, supra,* the parties in *Burch* never disputed that the private hospital was a state actor. *See Harvey,* 949 F.2d at 1132. Therefore, neither *Zinermon* nor *Burch* aids Lewis in his argument that defendants were state actors.

In determining that the requisite state action is not alleged, the court is not concluding that Lewis' allegations, taken as true, do not state a claim that his rights have been violated. The court is merely concluding that the state did not compel or encourage the actions of these private defendants. In *Jarrell v. Chemical Dependency Unit,* 791 F.2d 373, 374 (5th Cir. 1986), an action in which the plaintiff was involuntarily committed to a chemical dependency hospital, the Fifth Circuit concluded that, if the facts alleged by the plaintiff were true, the employees of the hospital may have acted contrary to state law, but the state did not direct the employees to act in such a manner. *Jarrell,* 791 F.2d at 374. In *Lugar,* the Supreme Court held that a Virginia statute related to garnishments violated procedural due process. *Lugar,* 457 U.S. at 941, 102 S.Ct. at 2755. The court noted that a procedural scheme implemented by a statute can be the product of state action, but added that "private misuse of a statute does not describe conduct that can be attributed to the state." *Id.* In conclusion, the *Lugar* court held:

> Petitioner did present a valid cause of action under Section 1983 insofar as he challenged the constitutionality of the Virginia statute; he did not insofar as he alleged only misuse or abuse of the statute.

*Id.* at 942, 102 S.Ct. at 2756. Lewis, therefore, cannot satisfy the state action requirement of the § 1983 analysis merely by asserting that defendants misused the Texas voluntary commitment statutes. At all relevant times, the alleged state actor defendants were acting as private parties, not as state actors.

 As noted earlier, Lewis alleges in the original complaint that the purported state actor defendants conspired with the other defendants to violate his constitutional rights. The rule is well-settled that private acts or conduct may result in liability under § 1983 if the private individual is a "willing participant in joint action with the State or its agents." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *Hale v. Harney,* 786 F.2d 688, 690 (5th Cir.1986). In order to establish a § 1983 cause of action based upon conspiracy, a plaintiff must establish (i) that the defendants agreed to commit actions that violated a plaintiff's constitutional rights, *Arsenaux v. Roberts,* 726 F.2d 1022, 1024 (5th Cir.1982), and (ii) that at least one of the defendants was a state actor. For example, the respective plaintiffs in both *Hale* and *Arsenaux* alleged that one of the defendants, a judge, con-

spired with the other defendants, who were private actors. *Hale,* 786 F.2d at 690; *Arsenaux,* 726 F.2d at 1023. Having determined that none of the defendants in this action was a state actor, the court cannot conclude that the private party defendants conspired with a state actor to violate Lewis' constitutional rights. Lewis' allegations of a conspiracy among the defendants, therefore, fail to state a claim under § 1983.

The court concludes that it appears, beyond doubt, that Lewis cannot prove a set of facts in support of his § 1983 claims that would entitle him to relief under that statute. In reaching this conclusion, the court has accepted as true all well-pleaded facts and has construed the complaint liberally in favor of Lewis.

## V.

### State Law Claims

In addition to his § 1983 claims, Lewis has alleged various state law claims against defendants, including false imprisonment, invasion of privacy, medical malpractice, fraudulent misrepresentation, and gross negligence. The court, in its discretion, may dismiss pendent state law claims after having disposed of federal claims. *See* 28 U.S.C. § 1367(c)(3). Section 1367(c)(3) is a codification of the court-made rule authorizing discretionary dismissal of pendent claims once the "crutch" that supported their pendency in the federal court has been removed.[7] *See* David D. Siegel, Practice Commentary, 28 U.S.C.A. § 1367 at 231, 235–36 (West Supp.1992).

■ Presumably the pre-§ 1367 case law pertaining to factors the court should consider in exercising its discretion to dismiss the supplemental claims are still relevant to exercise of the discretion given by § 1367(c)(3). In making such a decision, the court must balance judicial economy, convenience and fairness to the litigants, as well as the principles of federalism and comity in determining whether to dismiss the state law claims. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988); *see also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). If a court disposes of federal claims at an early stage in the litigation, it has a "powerful reason to choose not to continue to exercise jurisdiction." *See Cohill,* 484 U.S. at 351, 108 S.Ct. at 619. In making this discretionary determination, however, a court should always consider any adverse impact on the litigants that would result from either retaining or dismissing the state law claims. *See Transource Int'l, Inc. v. Trinity Indus., Inc.,* 725 F.2d 274, 290 (5th Cir.1984).

■ An adverse impact that might result from the dismissal of state law claims pre-§ 1367 would be the inability to assert the claims in state court as a result of the running of the applicable statute of limitations. The potential statute of limitations problem has been eliminated by the provisions of 28 U.S.C. § 1367(d), which tolls the running of limitations while the pendent claims have been pending in this court and for a period of thirty days after they are dismissed, unless state law provides for a longer tolling period. Moreover, there probably would have been tolling of the limitations under state law of Texas. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.064 (Vernon 1986). The "savings statute" applies to toll the statute of limitations on state law claims during the pendency of a federal suit in which such claims are alleged. *See Parker & Parsley Petroleum Co. v. Dresser Indus.,* 972 F.2d 580, 588 (5th Cir.1992); *see also Vale v. Ryan,* 809 S.W.2d 324, 327 (Tex.App.—Austin 1991, no writ). Whatever depositions have been taken during the pendency of this action in this court can be used in state court if the pendent claims are refiled there. *See* Tex. R.Civ.P. 207. Given the early stage of the action, and the other factors mentioned above, the court has concluded that the state law claims should be dismissed with-

---

**7.** Section 1367 codifies under the name "supplemental jurisdiction" the common law doctrines of "pendent" and "ancillary" jurisdiction.

out prejudice. As noted by the Supreme Court, when a district court disposes of all federal claims prior to trial, the factors to be considered, including judicial economy, convenience, fairness, and comity, "point toward declining to exercise jurisdiction over the remaining state law claims." *See Cohill*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7.

## VI.

### ORDER

The court ORDERS that any and all claims asserted by plaintiff against defendants under 42 U.S.C. §§ 1983 and 1988 be, and are hereby, dismissed because of the failure of plaintiff to state in his complaint a claim upon which relief could be granted under § 1983 or § 1988.

The court further ORDERS that plaintiff's state law claims be, and are hereby, dismissed without prejudice.

### FINAL JUDGMENT

Consistent with the memorandum opinion and order signed by the court in the above-styled and numbered cause on this date,

The court ORDERS, ADJUDGES and DECREES that:

(a) All causes of action asserted by plaintiff, Clyde Russell Lewis, against defendants, Byron Law–Yone, M.D., Leslie Secrest, M.D., Gary Etter, M.D., Howard Mark Cohen, M.D., Ronald Fleischmann, M.D., John M. Zimburean, M.D., Larrie W. Arnold, M.D., Bradford M. Goff, M.D., Angela M. Wood, M.D., William M. Pederson, M.D., Grover Lawlis, M.D., Fred L. Griffin, M.D., R. Sanford Kiser, M.D., Cris Craig, David Jacobsen, Dallas Psychiatric Associates, Larrie W. Arnold, M.D., P.A., Leslie H. Secrest, M.D., P.A., William M. Pederson, M.D., P.A., Fred L. Griffin, M.D., P.A., Ronald Fleischmann, M.D., P.A., Bradford M. Goff, M.D., P.A., Grover Lawlis, M.D., P.A., Angela M. Wood, M.D., P.A., John M. Zimburean, M.D., P.A., Gary Lee Etter, M.D., P.A., R. Sanford Kiser, M.D., P.A., NME Hospitals, Inc., d/b/a Brookhaven Psychiatric Pavilion and d/b/a R.H. Dedman Memorial Medical Center, National Medical Enterprises, Inc., Psychiatric Institutes of America, Inc., n/k/a NME Psychiatric Hospitals, Inc., William C. Whitehead, Sheila Asby, R.N., Norma L. Miller, Noemi E. Martin, Linda Behrendt, R.N., Rosemary Frederickson, Jane Doe, Jane Roe, Jane Zoe, and John C. Bedrosian, under 42 U.S.C. §§ 1983 and 1988 be, and are hereby, dismissed because of the failure of plaintiff to state in his complaint a claim upon which relief could be granted under § 1983 or § 1988;

(b) All remaining causes of action asserted by plaintiff against defendants be, and are hereby, dismissed without prejudice;

(c) Defendants each have and recover from plaintiff costs of court incurred by him, her, or it.