**Wanda Faye HUNT, Plaintiff**

v.

**STEVE DEMENT BAIL BONDS, INC., et al., Defendants.**

**Civil A. No. 95–168.**

United States District Court, W.D. Louisiana, Shreveport Division.

Feb. 12, 1996.

Kenneth C. Smith, Jr., Peatross Greer & Frazier, Shreveport, LA, for plaintiff.

Ansel Martin Stroud, III, Blanchard Walker et al., Shreveport, LA, for defendant.

## MEMORANDUM RULING

WALTER, District Judge.

Plaintiff Wanda Faye Hunt brings this action under 42 U.S.C. § 1983 for damages arising from alleged violations of her constitutional rights by defendants Steve Dement, Dan Reckentald, Mark Robbins, and Steve Dement Bail Bonds, Inc. Pending before the Court is defendants' motion to dismiss pursuant to Rule 12(b)(6). The defendants assert

that dismissal is warranted because the plaintiff's allegations do not satisfy the essential § 1983 requirement that the defendants acted under color of state law. In his Report and Recommendation, the Magistrate proposed that the defendants' motion be denied. The defendants objected to the Magistrate's findings. For the reasons that follow, the Magistrate's Report and Recommendation is set aside and the defendants' motion is GRANTED.

### I. Reviewing Standard and Standard for Dismissal

Federal Rule of Civil Procedure 72 sets forth the standard by which a district judge reviews a magistrate's report and recommendation. When the magistrate has ruled on a dispositive motion and objections are filed, Rule 72(b) requires the district judge to "make a de novo determination" of the magistrate's findings. *See also* 28 U.S.C. § 636(b)(1); U.L.L.R. 19.09.

■ Defendants filed a motion to dismiss pursuant to Rule 12(b)(6). Notice pleading requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). When a defendant moves for dismissal under Rule 12(b)(6), the Court must accept all well-pleaded facts as true, consider the allegations of the complaint in the light most favorable to the plaintiff, and refuse to grant dismissal unless the allegations do not support relief on any possible theory. *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir.1994); *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). It is not required that the complaint outline all the elements of a claim; it is sufficient if inferences may be drawn that these elements exists. *Walker v. South Central Bell*, 904 F.2d 275, 277 (5th Cir.1990).

### II. Background

Plaintiff alleges that the defendants violated 42 U.S.C. § 1983 when they entered her residence on 26 June 1994 and searched her

house for a fugitive. The individual defendants are bail bondsmen. Louisiana Code of Criminal Procedure article 345(A) gives bail bondsmen the authority to "arrest." [1] The extent of a bondsman's authority to arrest is not set out in Article 345(A).

The Louisiana Attorney General has issued an advisory opinion delineating a bondsman's authority to arrest under the prior Louisiana provision giving bondsmen the authority to arrest. The Attorney General opines that bondsmen do not need an arrest warrant to apprehend their principals. If it is necessary, they may also use reasonable force to enter their principal's residence, but only if they are denied admittance after announcing their identity and purpose. Finally, they are advised not to forcibly enter a person's residence other than their principal's without prior judicial approval. Op.Atty.Gen. 91–132 (May 28, 1991).

The defendants entered the plaintiff's home in search of a fugitive. No police officers were present. The defendants were not acting in concert with the police nor were the defendants aided in any fashion by the police.

### III. Law and Analysis

■ A 42 U.S.C. § 1983 action may be brought against any person "who, under color of any statute, ordinance, regulation, custom, or usage, of any State" deprives another of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. To recover under § 1983, a plaintiff must prove the following: (1) the defendants intentionally committed acts that violated one or more of plaintiff's federal rights; (2) in doing so, defendants acted "under color" of the authority of state law; and (3) defendants' acts were the legal cause of plaintiff's damages. *See Manax v. McNamara*, 842 F.2d 808, 812 (5th Cir.1988).

■ The only pertinent issue is whether the second element is satisfied. The control-

---

1. The pertinent provision of Article 345(A) provides as follows:

A surety may surrender the defendant or the defendant may surrender himself, in open court or to the officer charged with his deten-

tion, at any time prior to forfeiture or within the time allowed by law for setting aside a judgment of forfeiture of the bail bond. For the purpose of surrendering the defendant, the surety may arrest him.

ling legal standard under § 1983 for determining whether the defendants acted "under color of" state law is set forth in *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The Supreme Court established a two part test for determining whether "the conduct allegedly causing the deprivation of a federal right" is "fairly attributable to the State." 457 U.S. at 936, 102 S.Ct. at 2753. The first requirement of the *Lugar* test is that "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id.* The second requirement is that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* at 937, 102 S.Ct. at 2754.

### 1. *Lugar* Part One: Right or Privilege Created by the State

In this case, the bondsman's power to arrest is recognized by state statute. Sureties have traditionally always had the power to arrest their principals. In *Taylor v. Taintor,* 83 U.S. (16 Wall.) 366, 371, 21 L.Ed. 287 (1872), the Supreme Court stated that a surety may pursue his principal into another state; may arrest him on the Sabbath; and if necessary, may break into and enter his house to arrest him without process. In *Fitzpatrick v. Williams,* 46 F.2d 40 (5th Cir.1931), the Fifth Circuit, on an appeal from the Eastern District of Louisiana, stated as follows:

> The right of a surety to recapture his principal is not a matter of criminal procedure, but arises from the private undertaking implied in the furnishing of the bond. It is not a right of the state but of the surety.... [The state] cannot invoke the right of a surety to seize and surrender his principal, for this is a private and not a governmental remedy. It is equally true that the surety, if he has the right, is not required to resort to legal process to detain his principal for the purpose of making surrender.... As long as the principal remains within the jurisdiction, the right of bail to arrest and surrender him without process is conceded. As this right is a private one and not accom-

plished through governmental procedure, there would seem to be no obstacle to its exercise wherever the surety finds the principal. Needing no process, judicial or administrative, to seize his principal, jurisdiction does not enter into the question.

*Id.* at 40–41 (citations omitted). The Court in *Fitzpatrick* emphasized that the surety's right to arrest is "an original right that arises from the relationship between the principal and his bail, and not one derived through the State." *Id.* at 42. The mere codification of an existing private right does not convert that right into one created by the state. Finding that a bondsman's power to recapture his principal is not a right or privilege created by the state, the plaintiff has failed to satisfy the first part of the *Lugar* test.

### 2. *Lugar* Part Two: State Actor

The second part of the *Lugar* test is that the party charged with the deprivation must be a person who may be fairly said to be a state actor. A person may be a state actor in one of the following three ways: [1] be a state official, [2] act together with or obtain significant aid from state officials, or [3] because his conduct is otherwise chargeable to the state. *Lugar,* 457 U.S. at 936, 102 S.Ct. at 2754. Only the third need be considered. The narrow issue is whether a bail bondsman's conduct is chargeable to the state because his authority to arrest is recognized by Article 345(A).

Both sides rely on *Jackson v. Pantazes,* 810 F.2d 426 (4th Cir.1987), which held that a bail bondsman's conduct could be actionable under § 1983. In *Jackson,* the Fourth Circuit found the state action requirement satisfied for two reasons. First, unlike the present situation, the bondsman in *Jackson* obtained significant aid from a police officer. The second reason for finding that there was state action, however, related to the powers afforded bail bondsmen under the state statute giving them the power to arrest.

In determining that there was state action, the court in *Jackson* relied on the "symbiotic relationship" between the bondsman and the state. The court in *Jackson* states:

[B]oth parts of the *Lugar* test are satisfied where the nature of the relationship between the state and private actors is one of interdependence, or "symbiosis."

In this case, the symbiotic relationship between bail bondsmen and the Maryland criminal court system suffices to render Pantazes' conduct state action. Bondsmen depend, for their livelihood, upon the judicial use of a bail bond system, and they are licensed by the state. In return, bondsmen facilitate the pretrial release of accused persons, monitor their whereabouts and retrieve them for trial.

810 F.2d at 430 (citations omitted). This Court finds the analysis in *Jackson* unpersuasive. Not only is this aspect of the *Jackson* opinion dicta, but the "symbiotic relationship" test has been greatly restricted by subsequent Supreme Court jurisprudence. *See, e.g., Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (holding that a private entity's action does not become state action simply because it receives a benefit or service from the state, or is subject to state regulation). Furthermore, the *Jackson* decision is a significant expansion from similar Fifth Circuit jurisprudence.

■ The Fifth Circuit has been reluctant to find state action in similar situations even when private individuals or entities are granted special statutory authority. For example, the Fifth Circuit has held that a storekeeper's detention and search of suspected shoplifters pursuant to Louisiana Code of Criminal Procedure article 215[2] is not state action. *White v. Scrivner Corp.,* 594 F.2d 140 (5th Cir.1979). In *White,* the Fifth Circuit rejected the plaintiffs' contention that the merchant, by detaining them and searching their purses pursuant to this statute, became a state actor. The plaintiffs argued that the merchant was performing a

function exclusively reserved to the state, and thus, his actions were chargeable to the state.[3] The Court rejected this argument, stating:

A merchant's detention of persons suspected of stealing store property simply is not an action exclusively associated with the state. Experience teaches that the prime responsibility for the protection of personal property remains with the individual. A storekeeper's central motivation in detaining a person whom he believes is in the act of stealing his property is self-protection, not altruism. *Id.* at 142.

It cannot be seriously argued that bail bondsmen hunt down fugitives for eleemosynary reasons; their motivation is also financial self-protection.

The Court in *White* noted that although searches and detentions are functions that are usually performed by police officers, "private citizens do *occasionally* engage in them." *Id.* at 143 (emphasis added). Similarly, even though an arrest is a function usually performed by police officers, private citizens do occasionally make arrests.[4] The plaintiffs argue that the bondsman statute is different because the public benefits when a bondsman arrests a fugitive; however, surely the public also benefits when a merchant detains a shoplifter.

Action by a private party pursuant to a state statute, without something more, is insufficient to justify a characterization of that party as a state actor. *Lugar, supra,* 457 U.S. at 936, 102 S.Ct. at 2754; *Goss v. Memorial Hosp. Sys.,* 789 F.2d 353, 356 (5th Cir.1986) (stating that state action exists when the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must be deemed that of the state). Just like the merchant's statute, the bondsmen's statute does not *compel* bondsmen to arrest fugi-

---

**2.** La.Code Crim.P. art. 215 allows merchants and their employees to use reasonable force in detaining a person for questioning or arrest for up to sixty minutes and such detention shall not constitute an arrest.

**3.** A private party's performance of public functions may be conduct otherwise chargeable to the state, thus satisfying the state action requirement, but only when the function performed is

one "exclusively reserved to the state." *See Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 157, 98 S.Ct. 1729, 1734, 56 L.Ed.2d 185 (1978).

**4.** La.Code Crim.P. art 214 specifically provides, "[a] private person may make an arrest when the person arrested has committed a felony, whether in or out of his presence."

tives, it merely permits them to make arrests. "Absent some compulsion or some overt state involvement, no state action can be found because of the mere existence of the statute." *White, supra,* 594 F.2d at 143. *See also Flagg Brothers, supra,* 436 U.S. at 162–63, 98 S.Ct. at 1737–38.

█ This Court does not believe that Article 345(A) itself transforms a private bondsman's actions into conduct that is chargeable to the state of Louisiana. The only case that has squarely addressed this issue is *Landry v. A–Able Bonding, Inc.,* No. 1:92–CV–0257, 1994 WL 575480 (E.D.Tex. May 9, 1994). In *Landry,* the plaintiff decided to skip his court appearance in Lafayette Parish and go to Texas. After several months, the defendant bail bondsmen found and arrested the plaintiff in Texas and brought him back to Louisiana. The plaintiff filed a Federal § 1983 claim alleging due process violations and supplemental claims of false imprisonment and conversion of property.

The court in *Landry* found that the mere existence of Louisiana Code of Criminal Procedure article 345(A) does not automatically result in the bondsman's conduct being state action. Without some official involvement, the statute alone is insufficient. The court states:

> Had Burrow involved Louisiana or local law enforcement personnel, had he purported to execute the bench warrant, or used it in any way to regain custody of Landry, the state action issue would be couched in a context more favorable to Landry. Here, however, all the facts point the other way.

*Id.* at 6. The relevant facts in the instant case are virtually identical to the situation in *Landry.* This Court finds that the second prong of the *Lugar* test is also not satisfied.

Finding that the defendants did not act "under color of" state law, the plaintiff's § 1983 claims are dismissed. Moreover, the Court finds that there is no just reason for delay, therefore, pursuant to Federal Rule of Civil Procedure 54(b), this dismissal of the plaintiff's federal claims is a final judgment.